UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

K.M., parent, on behalf of B.M., a minor child,

                Plaintiffs,

     -against-

NEW YORK STATE PUBLIC HIGH SCHOOL ATHLETIC ASSOCIATION, INC., SECTION IV of NEW YORK STATE PUBLIC HIGH SCHOOL ATHLETIC ASSOCIATION, INC., MARYELLEN ELIA, in her official capacity as COMMISSIONER OF EDUCATION OF THE STATE OF NEW YORK

                Defendants

6:17-cv-06310 (EAW) (JWF)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## Table of Contents

Preliminary Statement .................................................................................................................. 1

Facts ............................................................................................................................................. 1

Argument ..................................................................................................................................... 5

   I.   Plaintiff is Entitled to a Preliminary Injunction .................................................................. 5

      A.   Plaintiff will Suffer Irreparable Harm if a Preliminary Injunction is Not Granted ...... 6

      B.   Plaintiff has a Likelihood of Success on the Merits ...................................................... 7

         1.   Plaintiff is a "Qualified Individual with a Disability" ................................................ 7

           i.   Plaintiff is an Individual with Multiple Disabilities ................................................. 8

           ii.   Plaintiff is Otherwise Qualified for Participation in High School Athletics ............ 9

         2.   Defendants are Public Entities Subject to Title II of the ADA ................................. 13

         3.   Defendants' Discrimination Against Plaintiff was by Reason of His Disability ....... 13

Conclusion ................................................................................................................................. 15

## Table of Authorities

**Cases**

*Bell & Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir.1983) .................................................. 9

*Bingham v. Oregon School Activities Assoc.*, 24 F. Supp. 2d 1110 (D. Oregon 1998) .......... 14, 16

*C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713 (S.D.N.Y. 2016) .......................................................... 8

*Cavallaro, et al. v. Ambach, et al.*, 575 F. Supp. 171 (W.D.N.Y. 1983) ...................................... 13

*Dennin v. Connecticut Interscholastic Athletic Conf. Inc.*, 913 F.Supp. 663 (D.Conn. 1996) 13, 16

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) .............................. 8

*Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F.Supp. 966 (E.D.N.Y.1994) ...... 9

*Galusha v. New York State Dep't of Envtl. Conservaation*, 27 F. Supp. 2d 117 (N.D.N.Y. 1998) 9

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953) ..................................... 10

*Henrietta D v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ............................................ 10, 12, 15, 16

*Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir.1979) ................................... 9

*Mary Jo C. v. New York State and Local Retirement System*, 707 F.3d 144 (2d Cir. 2013) .......... 8

*NAACP v. Town of East Haven*, 70 F.3d 219 (2d Cir.1995) .......................................................... 9

*People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12 (N.D.N.Y. 2000) ........ 9

*PGA Tour Inc. v. Casey Martin*, 532 U.S. 661 (2001) ................................................................. 14

*Reaves, et al. v. Mills, et al.*, 904 F. Supp. 120 (W.D.N.Y. 1995) ............................................... 13

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir.1990) ............................................. 9

*Southeastern Community College v. Davis*, 442 U.S. 397 (1979) ............................................... 17

*Tom Doherty Assocs. Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir.1995) ...................... 9

**Statutes**

28 C.F.R. § 35.130(b)(1)(ii) .......................................................................................................... 16

28 C.F.R. § 35.130(b)(1)(iii) ......................................................................................................... 16

28 C.F.R. § 35.130(b)(7)(i) ........................................................................................................... 12

29 C.F.R. § 1630.2(i) .................................................................................................................... 11

29 C.F.R. § 1630.2(j)(1) ................................................................................................................ 11

42 U.S.C. § 12102(2)(A)(B) .................................................................................................. 11

42 U.S.C. § 12102(4)(E)(i) .................................................................................................... 12

42 U.S.C. § 12131(2) ............................................................................................................. 10

**Regulations**

8 NYCRR 135.4(c)(7)(ii)(b)(1) ................................................................................................. 5

8 NYCRR 135.4(c)(7)(ii)(b)(1)(i) .............................................................................................. 5

**Court Documents**

B.M. Aff. .......................................................................................................................... 4, 5, 6

Barlow Aff. ............................................................................................................................... 6

Conklin Aff. .......................................................................................................................... 5, 6

Conklin Aff. Exhibit A ............................................................................................................. 6

Conklin Aff. Exhibit B ............................................................................................................. 6

Conklin Aff. Exhibit C .......................................................................................................... 5, 6

Conklin Aff. Exhibit D .......................................................................................................... 6, 7

Conklin Aff. Exhibit E ............................................................................................................. 7

Conklin Aff. Exhibit F ............................................................................................................. 7

K.M. Aff. .................................................................................................................................. 5

Limoncelli Aff. ......................................................................................................................... 5

**Preliminary Statement**

This action and the instant motion for a preliminary injunction seek to remedy the Defendants' violation of Plaintiff's rights as afforded by the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). This memorandum is submitted in support of Plaintiff's motion for a preliminary injunction immediately enjoining and restraining the Defendants from applying their eligibility rules to prevent Plaintiff from participating in athletics during his fifth year of high school.

**Facts**

Plaintiff began ninth grade in September 2013 at Horseheads High School in Horseheads Central School District ("School District"). B.M. Aff. ¶ 3. Plaintiff has chronic complex migraine headaches, foramen ovale,[1] postural orthostatic tachycardia syndrome,[2] and Factor V Leiden.[3] B.M. Aff. ¶ 1. Due to his disabilities, Plaintiff currently attends high school classes in the afternoon only, a scheduling accommodation which took effect during the 2015-2016 school year. B.M. Aff. ¶ 4. While Plaintiff entered high school with the expectation that he would graduate in June 2017 after completing the standard four year high school term, Plaintiff's disabilities, and resulting modified schedule, have reduced the number of courses he has completed each semester. B.M. Aff. ¶¶ 5-9. Plaintiff must therefore attend a fifth year of high school during the 2017-2018 academic year in order to earn his diploma. B.M. Aff. ¶ 11.

Plaintiff has participated in basketball as a member of his School District's team every year since he began high school in 2013, however this participation has been extremely limited

---

[1] A birth defect that causes a hole in the wall between the heart's upper chambers.
[2] A disorder that creates chronic difficultly standing upright due to lightheadedness and other symptoms associated with reduced blood flow to the brain.
[3] A blood-clotting disorder.

due to his disability. B.M. Aff. ¶ 14, 16. During his sophomore year, Plaintiff played a total of 8 minutes in the team's competitive basketball games, and during the 2016-2017 school year Plaintiff averaged approximately one quarter of play in each game he played, but was also ineligible to play for more than a third of the season due to disability related absences. B.M. Aff. ¶¶ 17-19.

Plaintiff was notified on July 18, 2016, that it was certain that he would require a fifth year of high school in order to earn his diploma. K.M. Aff. ¶ 4, Exhibit A. With the support of his athletic department, his administration at his School District, as well as his coach, his teammates, and his community, Plaintiff began seeking extended athletic eligibility for that fifth year.  Conklin Aff. ¶ 14, Exhibit C, p. 4; Limoncelli Aff. ¶¶ 3, 8, 9.

Defendant Commissioner Elia's Bylaws and Eligibility Standards 135.4 ("Defendants' regulations"), which are adopted, followed, interpreted, and enforced by Defendant New York State Public High School Athletic Association ("NYSPHAA") and Defendant Section IV of the New York State Public High School Athletic Association ("Section IV"), state that a student "shall be eligible for senior high school athletic competition in a sport during each of four consecutive seasons of such sport commencing with the [student's] entry into the ninth grade and prior to graduation…." 8 NYCRR 135.4(c)(7)(ii)(b)(1). If a student seeks a waiver of this policy, Defendants' regulations require that "as a direct result of the illness or accident, the [student] will be required to attend school for one or more additional semesters in order to graduate." 8 NYCRR 135.4(c)(7)(ii)(b)(1)(i). Plaintiff understood that he did not qualify for this waiver because he had "entered competition" for four years, despite the fact that he had only participated sporadically in the seasons due to his disability. B.M. Aff. ¶¶ 17-19. Plaintiff therefore requested that the guideline be modified to permit him to play during his senior year.

2

Conklin Aff. ¶¶ 3, 8, Exhibit A, pp. 3-5, Exhibit C, p. 3-4, 5-11; Barlow Aff. ¶ 2. Plaintiff sought a reasonable accommodation to the four year eligibility restriction.

Bert Conklin, the Athletic Director for Plaintiff's School District, filed an application for extended athletic eligibility on Plaintiff's behalf on June 15, 2016. Conklin Aff. ¶ 2. This application included a letter from Plaintiff's legal counsel explaining that Plaintiff sought a reasonable accommodation under the ADA. Conklin Aff. ¶ 2. Defendant Section IV refused to consider Plaintiff's application at that time because he had not yet completed four years of high school even though Plaintiff's School District provided verification that Plaintiff would not graduate with his class in 2017. Conklin Aff. ¶ 4, Exhibit B. Defendant Section IV did not respond to the reasonable accommodation request made with this application. Conklin Aff. ¶ 6.

On April 24, 2017, Mr. Conklin submitted a second application for extended eligibility on Plaintiff's behalf. Conklin Aff. ¶ 7. This application contained information explaining that, although Plaintiff had technically participated in athletics for four consecutive seasons under Defendants' regulations, his disabilities have led to frequent and prolonged absences from school, which resulted in infrequent participation in competitive basketball practices and games. Conklin Aff. Exhibit C, pg. 3-4, 5-11. This application also contained a request for a reasonable accommodation under the ADA. Conklin Aff. Exhibit C, 3-4, 5-11.

On July 20, 2017, Defendant Section IV denied Plaintiff's School District's request for extended eligibility for basketball and lacrosse for the 2017-2018 school year. Conklin Aff ¶ 9, Exhibit D. Defendant Section IV determined that Plaintiff did not meet the requirements for extended eligibility through waiver of the four consecutive seasons regulation, or the narrow exception for students with disabilities who wish to participate in non-contact sports. Conklin Aff. Exhibit D. Defendant Section IV further stated that Plaintiff's eligibility would have a

3

significant adverse effect on the opportunity of other students to participate in interschool competition, but did not specify what that impact would be. Conklin Aff. Exhibit D.[4] Defendant Section IV did not address nor acknowledge Plaintiff's request for reasonable accommodation under the ADA. Conklin Aff. ¶ 13, Exhibit D.

On August 7, 2017, Mr. Conklin wrote a letter of appeal to Defendant Section IV and explicitly requested a reasonable modification of the eligibility rules in order to accommodate B.M.'s disability. Conklin Aff. ¶ 10, Exhibit E. On August 14, 2017, Mr. Conklin received notice that the Appeals Committee for Defendant Section IV had affirmed the decision to deny extended eligibility for B.M. Conklin Aff. ¶ 12, Exhibit F. Defendant Section IV, again, did not address nor acknowledge Plaintiff's request for reasonable accommodation under the ADA. Conklin Aff. ¶ 13, Exhibit F.

Defendants have repeatedly failed to acknowledge or respond to Plaintiff's reasonable accommodation request. Despite overwhelming support from Plaintiff's School District, including the athletic director, administration and the coaching staff, Defendants have continually ignored Plaintiff's request based on his status as an individual with a disability, and have continued to deny his athletic eligibility under the standard applied to all students.

---

[4] Plaintiff's basketball coach has confirmed that there would be no adverse impact on the opportunity of other students to play, as Plaintiff would be placed on the team as an "extra" player. Limoncelli Aff. ¶¶ 5-7.

**Argument**

I.     **Plaintiff is Entitled to a Preliminary Injunction**

Plaintiff is entitled to injunctive relief. A party seeking a preliminary injunction must demonstrate:

> either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction.

*C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713, 716 (S.D.N.Y. 2016) (citing *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (citation and internal quotation marks omitted)). Plaintiff respectfully asserts that he can meet the above standard by showing irreparable harm and a likelihood of success on the merits, and the reasons for that assertion are set forth below.

Federal preemption results where, like here, an actual conflict exists between federal law and state law, as "the ADA preempts inconsistent state law when appropriate and necessary to effectuate a reasonable accommodation under Title II." *See Mary Jo C. v. New York State and Local Retirement System*, 707 F.3d 144, 164 (2d Cir. 2013) ("An actual conflict between state and federal law exists when compliance with both federal and state regulations is a physical impossibility, or when state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") Courts have held that athletic eligibility cannot be lawfully withheld from a student on account of that student's disability, and further that a reasonable modification which would allow a student with a disability to participate in athletics cannot be denied. *See id; see also Baisden v. W. Virginia Secondary Sch. Activities Comm'n*, 568 S.E.2d 32, 35 (W.Va. 2002) ("Waiver should be granted where a student's disabilities have

5

delayed his progression through the education process and it is shown that the participation of the student requesting a waiver will not materially alter the quality of the interscholastic sports competition involved.").

### A. Plaintiff will Suffer Irreparable Harm if a Preliminary Injunction is Not Granted

The showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12, 16 (N.D.N.Y. 2000) (quoting *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F.Supp. 966, 974 (E.D.N.Y.1994); *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995)). "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'" *Galusha v. New York State Dep't of Envtl. Conservaation*, 27 F. Supp. 2d 117, 122 (N.D.N.Y. 1998) (quoting *Tom Doherty Assocs. Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quoting *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

Plaintiff has demonstrated that he will suffer real and immediate harm in the absence of injunctive relief. Plaintiff has been denied the opportunity to participate in basketball during the 2017-2018 school year, and his request for reasonable modification of policy under the ADA has been denied. Once denied the opportunity to participate in basketball practices, scrimmages, and games, Plaintiff will never be able to have those opportunities again. No amount of financial compensation could reverse time and allow Plaintiff to join his teammates on the court during his senior year.

### B. Plaintiff has a Likelihood of Success on the Merits

In seeking injunctive relief as Plaintiff does, it is not necessary to show that success is an absolutely certainty; rather, Plaintiff need only show that there is a fair probability that he will prevail. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) ("To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.").

Plaintiff seeks a reasonable accommodation under the ADA, and alleges that Defendants' failure to respond to, consider, or even acknowledge his request is illegal discrimination. In order to establish a claim of discrimination under Title II of the ADA, Plaintiff must demonstrate that (1) he is a "qualified individual" with a disability; (2) that the Defendant is subject to the ADA; and (3) that Plaintiff was denied the opportunity to participate equally in or benefit equally from Defendants' services, programs or activities, by reason of his disability. *See Henrietta D v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

### 1. Plaintiff is a "Qualified Individual with a Disability"

The term qualified individual with a disability means "an individual with a disability, who with or without reasonable modifications to rules, policies or practices…meets the essential eligibility requirements for the…participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiff asserts that he is an individual with a disability who, with reasonable modification to Defendants' policy, meets the essential eligibility requirements for participation in basketball and is therefore qualified.

7

### i.   Plaintiff is an Individual with Multiple Disabilities

It is without question that Plaintiff suffers from multiple disabilities. As stated above, Plaintiff has chronic complex migraine headaches, foramen ovale, postural orthostatic tachycardia syndrome ("POTS"), and Factor V Leiden. POTS creates chronic difficulty standing upright due to lightheadedness and other systems associated with reduced blood flow to the brain. Both patent foramen ovale, which is a small hole in the heart, and Factor V Leiden, a blood clotting disorder, may lead to deoxygenated blood or small blood clots, and may trigger Plaintiff's migraines. Plaintiff has attempted a number of procedures and tried a variety of medications for his disabilities with minimal effect.

Under the ADA, an individual is disabled if he has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A)(B). Major life activities include functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working," and also include "[t]he operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions". 29 C.F.R. § 1630.2(i)-(ii). The term "substantially limits" means:

>    (i)   Unable to perform a major life activity that the average person in the general population can perform; or
>
>    (ii)   Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). As described above, Plaintiff's disabilities substantially limit many of his major life activities, as when he is suffering from the symptoms of his complex migraines and POTS he must often attempt sleep for extended periods of time in a room devoid of any light or sound. Plaintiff is frequently unable to learn when he is experiencing symptoms, and Plaintiff's disabilities lead to prolonged periods of absence from school, as well as the need to receive homebound instruction over periods of time. Many other major life activities, such as walking, seeing, hearing, and neurological function are also significantly restricted during episodes. Plaintiff's migraine headaches can last for several days, and for periods of time Plaintiff has consistently experienced migraines lasting between one and three days at least once a week. Conklin Aff., Exhibit A p. 27. "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," 42 U.S.C.A. § 12102(4)(D), and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures…." 42 U.S.C. § 12102(4)(E)(i). Plaintiff is an individual with a disability under the ADA.

### ii. Plaintiff is Otherwise Qualified for Participation in High School Athletics

Plaintiff meets the essential eligibility requirements for participation in Defendants' basketball program, as he has not, and will not during the 2017-2018 school year, attain the age of 19 and is a high school student within Plaintiff's School District.

An extension of his athletic eligibility is a reasonable modification of policy under Title II of the ADA. Defendants have discriminated against Plaintiff by failing to even acknowledge to his request for reasonable modification. 28 C.F.R. § 35.130(b)(7)(i). Moreover, while acknowledging that a defendant need not make a requested accommodation if it would fundamentally alter the nature of the program or impose an undue hardship, *Henrietta D.*, 331

9

F.3d at 273, granting Plaintiff's request for extended eligibility would not fundamentally alter Defendants' program nor impose an undue burden. Plaintiff asserts that the accommodation he request is reasonable under the circumstances.

While the Western District has not considered this particular issue, it has considered waiver of the age requirement for high school athletics. While the age rule may be necessary to prevent red-shirting or a competitive advantage, such parallels cannot be drawn to Plaintiff's request for extended eligibility. Plaintiff's claims should be distinguished from those seeking a modification to the eligibility regulations governing age. The Court has ruled that students who have attained an age of nineteen are not "otherwise qualified" to participate in high school athletics because the age requirement has no relation to a student's disability. Based on this, a failure to modify the age restriction for eligibility for a student with a disability is not a violation of the law. *See Reaves, et al. v. Mills, et al.*, 904 F. Supp. 120 (W.D.N.Y. 1995); *Cavallaro, et al. v. Ambach, et al.*, 575 F. Supp. 171 (W.D.N.Y. 1983). As Plaintiff is "otherwise qualified," unlike those students who are too old to qualify, the rationale applied by this Court to the age requirement should not be applied to Plaintiff's application regarding the four year standard.

However, the individualized assessment used by the Second Circuit in considering applications of extended eligibility through waiver of the age requirement should be applied to Plaintiff. "Due process requires a meaningful, individualized inquiry into plaintiff's request for a waiver. This includes consideration of whether any of the stated purposes behind the rule are implicated by plaintiff's participation." *Dennin v. Connecticut Interscholastic Athletic Conf. Inc.*, 913 F.Supp. 663, 671 (D.Conn. 1996) (*judgment vacated, appeal dismissed on grounds of mootness*, 94 F.3d 96 (2d Cir. 1996)) (internal citation and quotation omitted). Such an individualized assessment shows that a reasonable accommodation to the four year eligibility

rule does not undermine the purposes of the rule. Plaintiff is 17 years old, no older than his peers, having not even turned eighteen at the time of the filing of the initial complaint, and therefore has no competitive advantage based on maturity; Plaintiff's height and weight are unchanged since last year and he is not more muscular; he did not participate in "red-shirting"; he is no safety risk to himself or others; and his education was not delayed to gain a competitive advantage but only by reason of his disability. The Supreme Court has supported the need for an individualized analysis, stating that it is clear that a basic requirement of the ADA is the evaluation of a disabled person on an individual basis. *See PGA Tour Inc. v. Casey Martin*, 532 U.S. 661, 663 (2001) ("Even if [defendant's] factual predicate is accepted, its legal position is fatally flawed because its refusal to consider [plaintiff's] personal circumstances in deciding whether to accommodate his disability runs counter to the ADA's requirement that an individualized inquiry be conducted."). It would not be an undue burden for Defendants to consider the factors of a reasonable accommodation request, as individual analyses of student circumstances are already being made by Defendants in order to determine eligibility and other special accommodations.

The court in *Bingham v. Oregon School Activities Assoc.*, 24 F. Supp. 2d 1110 (D. Oregon 1998), granted the student's request for a preliminary injunction enjoining the Oregon School Activities Association from applying its four year eligibility rule which prevented plaintiff from participating in athletics during his fifth year of high school. The court's analysis in *Bingham* correctly noted that states implement eight semester or four year eligibility rules in order to prevent parents and coaches prioritizing athletics over academics, and "red-shirting" freshman thus preventing graduation in four years in order to allow an older, more mature and developed, athlete to take the field in a fifth year of high school. The court in *Bingham* noted that

11

plaintiff's participation in athletics during his fifth year of high school would not frustrate the goal of preventing red-shirting, as he was not older or more athletically experienced than his opponents or teammates, and there was no evidence that plaintiff intended to attend a fifth year of high school in order to extend his playing time.

As in *Bingham*, Plaintiff here is not older or more athletically experienced than his peers. In fact, Plaintiff has had much less athletic experience than most of his teammates or opponents, as he has been forced to miss extended periods of both practice and competitive games while managing the symptoms of his disabilities. Plaintiff, as is evidenced by his class schedules and accommodation plans, entered the 9th grade with the intent of graduating with his class in four years. It was only because of his disabilities, and the resultant need for a reduced schedule, that Plaintiff did not graduate on time. There is no evidence that Plaintiff was attempting to delay graduation in order to gain more playing time. Defendants' four year eligibility rule's purpose in encouraging students to graduate in four years is not frustrated if, like in Plaintiff's situation, the student's failure to do so is caused by a serious disability beyond the student's control.

Defendants may argue that Plaintiff's participation in basketball during his senior year would have an alleged adverse impact on the opportunity of his peers to participate, but this is untrue. Due to the unpredictable and chronic nature of Plaintiff's disabilities, Plaintiff's coach cannot count on his attendance or ability to regularly participate in any given game. Limoncelli Aff. ¶ 4. Therefore, should Plaintiff be included on the basketball roster for this coming season, he would be included as an "extra" player, and therefore would not take the place of another student. Limoncelli Aff. ¶¶ 5-6. Moreover, Plaintiff's coach, teammates, classmates, school district and the larger community are supportive of his desire to play, and they, who know best, believe there would be no adverse effect if plaintiffs request was granted.

12

Plaintiff's request for accommodation is reasonable.

### 2. Defendants are Public Entities Subject to Title II of the ADA

Defendant Commissioner Elia is considered a "public entity" under Title II when sued in her official capacity. *Henrietta D.*, 331 F.3d at 288 (holding a state officer sued in her official capacity, under the doctrine of *Ex parte Young*, is a "public entity" subject to liability under the ADA).

Public and private secondary schools are expressly included entities which are subject to the ADA, specifically Title II. 42 U.S.C. § 12181(7)(J). Public schools in New York delegate authority to the Defendants NYSPHAA and Section IV to direct and control their athletic programs, and these Defendants play a substantial role in determining and enforcing the regulating policies. Certainly, Defendants NYSPHAA and Section IV are an instrumentality of the state whose actions constitute state action. *See Dennin*, 913 F. Supp. at 670. "Athletics and other extracurricular activities are part of the 'goods, services, facilities, privileges, advantages, and accommodations' offered by schools to its students," and "[a] school may not discriminate on the basis of a student's disability, nor deny a reasonable accommodation to a disabled student." *Bingham*, 24 F. Supp. 2d at 1116 .

### 3. Defendants' Discrimination Against Plaintiff was by Reason of His Disability

Pursuant to the ADA and the regulations promulgated in its implementation, a public entity is not only prohibited from affording to persons with disabilities services that are "not equal to that afforded to others," 28 C.F.R. § 35.130(b)(1)(ii), or "not as effective in affording equal opportunity," 28 C.F.R. § 35.130(b)(1)(iii), but also cannot prevent a qualified individual with a disability from enjoying "any aid, benefit or service," 28 C.F.R. § 35.130(b)(1)(i), regardless of whether other individuals are granted access. This language necessarily implies that

13

the regulation is not conditioned on the ability of the Plaintiff, as an "otherwise qualified individual with a disability" to show that other individuals receive more favorable treatment. *See Henrietta D.*, 331 F.3d at 274.

Plaintiff asserts that he is being denied extended eligibility for athletic competition by reason of his disability. Discrimination under the ADA may include a defendant's failure to make reasonable accommodations to the needs of a disabled person. *See Henrietta D. v. Bloomberg*, 331 F.3d at 273 (discussing claims of discrimination based on failure to make a "reasonable accommodation"). Discrimination by reason of disability can be shown without "an intent to discriminate," where it is established that there was a refusal to provide a reasonable accommodation. *See Southeastern Community College v. Davis*, 442 U.S. 397 (1979) ("situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory.").

As explained above, a reasonable modification to the four year eligibility rule is a reasonable accommodation under the ADA because it does not frustrate the purpose of the rule and Plaintiff is a qualified individual with a disability. Defendants plainly ignored Plaintiff's request for reasonable accommodation and instead repeatedly denied his request by characterizing it as a standard request for extended eligibility under Defendants' regulations. Plaintiff admits that he does not qualify for extended eligibility under the current regulations standard extended eligibility application. By refusing to consider, or even acknowledge, Plaintiff's reasonable accommodation request, Defendants have discriminated against Plaintiff by reason of his disability.

Further, Plaintiff also asserts that he has missed a vast portion of the basketball seasons for which he was eligible and entered competition solely because of his disability, and moreover

that he is required to attend a fifth year of high school in order to earn his diploma solely by reason of his disability, and therefore Defendants' refusal to consider and grant extended athletic eligibility for Plaintiff is discrimination on the basis of his disability.

## Conclusion

For all the above reasons, this Court should issue a preliminary injunction granting Plaintiff extended athletic eligibility for the upcoming basketball season and allow Plaintiff to participate as a member of Plaintiff's School District's team.

Dated: October 13, 2017
Rochester, New York

By:  /S/ Jessica Barlow____

JESSICA BARLOW

SIMEON GOLDMAN

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiffs
44 Exchange Blvd, Suite 110
Rochester, New York 14614
Phone:  518-512-4841
Fax:  585-348-9823 (not for service)