UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
DEC 0 4 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

BREWSTER MARSHALL,

                 Plaintiff,

     v.

NEW YORK STATE PUBLIC HIGH
SCHOOL ATHLETIC ASSOCIATION,
INC., SECTION IV OF NEW YORK
PUBLIC HIGH SCHOOL ATHLETIC
ASSOCIATION, INC., and MARYELLEN
ELIA, in her official capacity as
Commissioner of Education of the State
Of New York,

                Defendants.

**DECISION AND ORDER**

6:17-CV-06310 EAW

_____

## **INTRODUCTION**

On May 17, 2017, K.M. commenced this action on behalf of her minor child, Brewster Marshall ("Plaintiff"),[1] a high school senior suffering from postural orthostatic tachycardia syndrome ("POTS") as well as other ailments. (Dkt. 1). Plaintiff alleges that the New York State Public High School Athletic Association, Inc. ("NYSPHSAA") and Section IV of the New York Public High School Athletic Association, Inc. ("Section IV") unlawfully denied him extended athletic eligibility to play a fifth consecutive year of high

_____

[1] On November 17, 2017, by oral motion, Plaintiff sought leave to substitute himself as party plaintiff in this action because he had since reached the age of majority. The Court orally granted Plaintiff's unopposed motion, as confirmed by Text Order entered November 20, 2017. (Dkt. 57). The next day, the Clerk of Court terminated K.M. from this action, and named Brewster Marshall as the new party plaintiff.

- 1 -

school basketball in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"). (*See id.* at 8-9). Specifically, Plaintiff contends that NYSPHSAA and Section IV discriminated against him because of his disabilities by refusing to provide him with a reasonable accommodation permitting his participation in interscholastic basketball during his fifth and final year of high school. (*See id.* at 6-7). On August 23, 2017, Plaintiff filed an amended complaint in which Plaintiff joined Maryellen Elia, in her official capacity as Commissioner of Education of the State of New York (the "Commissioner"), with NYSPHSAA and Section IV, as a defendant in this action (collectively, "Defendants"). (Dkt. 19). While Plaintiff further elaborates upon his factual allegations in the amended complaint, the nature of those allegations remains largely unchanged. However, Plaintiff now requests that the Court order the Commissioner to "promptly promulgate an emergency regulation by which students with disabilities who, because of their disabilities, must attend high school for more than four years may request extended athletic eligibility." (*Id.* at 11).

Presently before the Court is Plaintiff's motion for a preliminary injunction (Dkt. 38), and the Commissioner's motion to dismiss (Dkt. 46).[2] For the following reasons, both motions are denied.

---

[2]     NYSPHSAA and Section IV have both answered the amended complaint. (Dkt. 25; Dkt. 36).

## FACTUAL BACKGROUND[3]

Plaintiff is a high school senior who resides in Horseheads, New York, and attends Horseheads High School. (Dkt. 19 at 2, 4). Plaintiff suffers from various health issues, including "chronic complex migraine headaches"; "patent foramen ovale," which is "a small hole in the heart"; Factor V Leiden, which is a "blood clotting disorder"; and POTS, which "creates chronic difficulty standing upright due to lightheadedness and other symptoms associated with reduced blood flow to the brain." (*Id.* at 3). These disabilities prevent Plaintiff from carrying a full high school course load. (*Id.* at 3-4). As a result, on July 18, 2016, Plaintiff received notification that he would not progress to the 12th grade, and that he would not graduate in June 2017, as originally planned. (*Id.* at ¶¶ 30, 32).

Plaintiff entered the 9th grade at Horseheads High School in September 2013. (*Id.* at ¶ 15). Although Plaintiff's disabilities limited the frequency in which he participated in competitive interscholastic basketball, Plaintiff has, in fact, entered competition for each year since September 2013. (*Id.* at ¶¶ 35-39). Despite having participated in high school basketball for four consecutive seasons, Plaintiff sought extended athletic eligibility to participate in varsity basketball during his fifth and final year of high school. (*See id.* at ¶ 41).

On June 15, 2016, the Horseheads Central School District (the "District") submitted an application for extended athletic eligibility to Section IV on Plaintiff's behalf. (*Id.* at ¶ 53). Section IV did not consider this application because, at the time, Plaintiff had not

---

[3]     The following facts are taken from Plaintiff's amended complaint unless otherwise specified. (Dkt. 19).

yet completed four years of high school. (*Id.* at ¶ 54). Subsequently, Plaintiff requested that he receive a "reasonable modification under the ADA," permitting extended eligibility for basketball, a contact sport, because no such exception currently exists for students who must attend more than four years of high school due to a disability. (*Id.* at ¶¶ 58-59). Plaintiff has yet to receive a response to this request. (*Id.* at ¶ 60).

On April 24, 2017, the District submitted a second application to Section IV, which included a request for a reasonable accommodation under the ADA on Plaintiff's behalf. (*Id.* at ¶ 61). On July 20, 2017, Section IV denied this application without mentioning the requested reasonable accommodation. (*Id.* at ¶¶ 62-63). On August 7, 2017, Bert Conklin, the District's Athletic Director, appealed Section IV's decision on Plaintiff's behalf, and requested that Plaintiff receive a reasonable accommodation under the athletic eligibility rules. (*Id.* at ¶ 64; *see* Dkt. 38-3 at 8-9 (Conklin's affidavit)). On August 14, 2017, Section IV's Appeals Committee affirmed the initial decision without mentioning the request for a reasonable accommodation. (Dkt. 19 at ¶¶ 65-66).

Plaintiff alleges that Defendants are all public entities for purposes of the ADA (*see id.* at ¶¶ 77-79), and that they each receive "federal financial assistance" for purposes of Section 504 (*id.* at ¶ 88). Plaintiff further alleges that his requested extension of athletic eligibility constitutes a reasonable modification under the ADA and does not frustrate the purposes of the four-year athletic eligibility standard (hereinafter, the "Duration of Competition Rule"). (*Id.* at ¶¶ 82, 90). Plaintiff claims that Defendants have discriminated against him because of his disabilities by refusing to grant a reasonable modification in violation of Title II of the ADA and Section 504. (*See id.* at ¶¶ 83, 91).

## PROCEDURAL HISTORY

On October 13, 2017, Plaintiff filed a motion for a preliminary injunction requesting the Court enjoin Defendants from denying him extended athletic eligibility for the 2017-18 Section IV High School Boys Varsity Basketball Season. (Dkt. 38 at 4). Plaintiff also filed a motion to expedite a hearing on the motion for a preliminary injunction. (Dkt. 39). On October 16, 2017, the Court granted Plaintiff's motion to expedite, and set a briefing schedule and an oral argument date. (Dkt. 43). On October 24, 2017, the Commissioner filed a motion to dismiss the amended complaint, arguing that Plaintiff failed to state a claim upon which relief may be granted, that the abstention doctrine strips this Court of subject matter jurisdiction, and that the Commissioner enjoys legislative immunity against Plaintiff's request for an emergency regulation. (Dkt. 46-1). All Defendants have submitted papers in opposition to Plaintiff's motion for a preliminary injunction (Dkt. 47; Dkt. 48; Dkt. 49; Dkt. 50), and Plaintiff has opposed the Commissioner's motion to dismiss (Dkt. 52). On November 17, 2017, the Court held oral argument, and reserved decision on both motions. (Dkt. 56).

## DISCUSSION

"'A motion to dismiss based on the abstention doctrine is . . . considered as a motion made pursuant to Rule 12(b)(1).'" *Rehab. Support Servs., Inc. v. Town of Esopus*, 226 F. Supp. 3d 113, 125 (N.D.N.Y. 2016) (quoting *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008)). For this reason, the Court will first address the Commissioner's abstention argument to determine whether the Court has subject matter jurisdiction to entertain this action.

# I.   Motion to Dismiss under Rule 12(b)(1)

## A.   Legal Standards

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that the court retains jurisdiction." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003), *aff'd*, 249 F. App'x 851 (2d Cir. 2007). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." *Young v. United States*, No. 12–CV–2342 (ARR)(SG), 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quotation omitted).

## B.   *Pullman* Abstention Does Not Apply

The Commissioner argues that the abstention doctrine set forth in *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) applies here because currently pending state administrative proceedings could moot any decision by this Court in this federal action.

(Dkt. 46-1 at 14-15). Plaintiff responds that abstention would be inappropriate because the Commissioner does not consider ADA and Section 504 claims, such as those asserted here, to be properly before her on administrative appeal, and thus, there is no concern that this action may be rendered moot or that inconsistent outcomes will result from the procession of these federal claims. (Dkt. 52 at 24-25).

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The Second Circuit has "abstained under *Pullman* 'when three conditions are met: (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue.'" *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004) (quoting *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000)). Here, no "federal constitutional issue" is dependent upon the interpretation of state law in this action. *See Am. Ass'n of People With Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1283 (M.D. Fla. 2002) ("*Pullman* abstention is clearly not applicable here if for no other reason than the fact that there are no federal constitutional issues before this Court to be avoided by such abstention."); *see also Cecos Int'l, Inc. v. Jorling*, 706 F. Supp. 1006, 1013 (N.D.N.Y. 1989) ("Abstention under *Pullman* is not proper, however, 'when a state statute is not fairly subject to an interpretation which will render unnecessary adjudication of the federal constitutional question.'" (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984))), *aff'd*, 895

F.2d 66 (2d Cir. 1990). Plaintiff has not asserted a federal constitutional claim in the amended complaint; Plaintiff's claims arise from federal statutory law. (Dkt. 19).[4]

Other reasons advise against *Pullman* abstention as well. "Here, the presence of federal statutory claims and the clarity of the state . . . regulation[] renders *Pullman* inapplicable." *Philipp v. Carey*, 517 F. Supp. 513, 521 (N.D.N.Y. 1981). Indeed, the parties do not argue that the Commissioner's regulation is unclear; rather, the primary disagreement in this case is whether the Duration of Competition Rule constitutes an "essential eligibility requirement" and whether modification of this requirement is a "reasonable accommodation" under *federal* law. (*See* Dkt. 38-2 at 10-16; Dkt. 46-1 at 6-14; Dkt. 49 at 12-21; Dkt. 52 at 8-23). Moreover, "[t]he regulation[] at issue [is] neither ambiguous nor unintelligible, nor [is it] rendered 'unclear' [even if] no state court has yet construed [it]" in this context. *Handberry v. Thompson*, 446 F.3d 335, 356 (2d Cir. 2006) (internal quotation marks and citation omitted).

Lastly, it appears unlikely that the state administrative proceedings will reach the merits of Plaintiff's ADA and Section 504 causes of action. Several prior decisions of the Commissioner have expressly declined to opine upon ADA and Section 504 contentions, stating that an administrative appeal to the Commissioner is not the proper forum to assert such claims. *See, e.g., Appeal of John P. Ghezzi, et al.*, 55 Ed Dept Rpt, Decision No.

---

[4]     To the extent Plaintiff argues that the Supremacy Clause of the United States Constitution requires the modification of the Duration of Competition Rule (Dkt. 54 at 8-9), any preemption inquiry is inherent to the ADA's statutory scheme, but it does not give rise to an independent constitutional issue under the United States Constitution, as will be explained further below.

16890 ("To the extent that [the] petitioners assert claims under the ADA, the appeal must be dismissed for lack of jurisdiction. An appeal to the Commissioner is not the proper forum in which to raise alleged violations of the ADA."); *Appeal of a Student with a Disability*, 48 Ed Dept Rpt 108, 110, Decision No. 15,806 ("Ultimately, enforcement of § 504 is within the jurisdiction of the federal courts, the U.S. Department of Justice and the U.S. Department of Education and may not be obtained in an appeal brought pursuant to Education Law § 310."); *Appeal of Linda Cochran, et al.*, 35 Ed Dept Rpt 555, Decision No. 13,631 ("[S]uch a claim would assert a violation of 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) as well as the ADA (42 U.S.C. 12101-12133), enforcement of which is within the jurisdiction of the federal courts, the U.S. Department of Justice and the U.S. Department of Education."). Furthermore, at oral argument, Plaintiff's counsel confirmed that no ADA claims are presently before the Commissioner on the pending administrative appeal. The Court also notes that it is not without significance that Plaintiff has not yet received any administrative response regarding the requests for a reasonable accommodation.

Therefore, the Court finds that *Pullman* abstention is not applicable to this matter, and the Commissioner's motion to dismiss is denied insofar as it is based upon this ground.

## C. *Younger* Abstention Does Not Apply

While the Commissioner does not specifically argue for the application of the separate abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), in the interest of completeness and to the extent the Commissioner's argument could be construed

as contending that this action may interfere with the pending state administrative proceeding, the Court disagrees and denies abstention under *Younger*.

"Although *Younger* was initially developed as a limitation on the ability of federal courts to interfere with pending state criminal proceedings, the Supreme Court has since extended *Younger*'s application to bar federal interference with certain state civil and administrative proceedings." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014). Nonetheless, the Supreme Court has recently clarified that *Younger* abstention applies only in three "exceptional circumstances": (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings"; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). Clearly, there is no "ongoing state criminal prosecution" involved in this action. Similarly, state actors have commenced no "civil enforcement proceedings." Indeed, Plaintiff initiated the state administrative proceedings at issue here, and these proceedings are certainly not "more akin to a criminal prosecution than are most civil cases." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). Lastly, the state courts are not involved in this action, rendering the third narrow circumstance in which this Court may invoke *Younger* abstention inapplicable. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (involving bond requirements); *Juidice v. Vail*, 430 U.S. 327, 336 (1977) (involving civil contempt orders).

Therefore, the Court finds that it has subject matter jurisdiction over this action, and the Commissioner's motion is denied insofar as it seeks dismissal of the amended complaint pursuant to the abstention doctrine.

## II.  Motion to Dismiss under Rule 12(b)(6)

### A.  Legal Standards

"'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion by "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in

original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

## B. Principles of the ADA and Section 504

One of the stated purposes underlying the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In effecting this goal, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). "As the standards for actions under these provisions of the ADA and the Rehabilitation Act are generally equivalent, [courts in this Circuit] analyze such claims together." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015).

## C.    Requirements to State a Claim under the ADA and Section 504

To establish a prima facie case of discrimination under either the ADA or Section 504, a plaintiff must show the following: (1) plaintiff is a "qualified individual with a disability;" (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity;" and (3) "such exclusion or discrimination was due to [plaintiff's] disability."

*B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)). "A qualified individual with a disability is defined as a disabled person who, whether or not given an accommodation, 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir.) (quoting 42 U.S.C. § 12131(2)), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004). "Cases interpreting the 'essential eligibility requirement' language indicate that whether an eligibility requirement is essential is determined by consulting the importance of the requirement to the program in question." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 157 (2d Cir. 2013). "The [implementing] regulations indicate that 'essential eligibility requirements' are those requirements without which the 'nature' of the program would be 'fundamentally alter[ed].'" *Id.* (quoting 28 C.F.R. § 35.130(b)(7)).

"A requirement of a program is not, however, considered to be 'essential' if a 'reasonable accommodation' would enable an individual to qualify for the benefit. Accordingly, the 'reasonableness' of an accommodation and the 'essentialness' of an eligibility requirement are inextricably intertwined and must be examined together." *Castellano v. City of N.Y.*, 946 F. Supp. 249, 253 (S.D.N.Y. 1996), *aff'd*, 142 F.3d 58 (2d

Cir. 1998). "In the education context, the ADA and the Rehabilitation Act require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program, or 'fundamentally alter the nature of the service, program, or activity.'" *Dean*, 804 F.3d at 186-87 (citations omitted). "Reasonable accommodations do not require an institution 'to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)). Accordingly, "[a]lthough a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012).

The ADA requires the courts "to analyze the importance of an eligibility requirement for a public program or benefit, rather than to defer automatically to whatever 'formal legal eligibility requirements' may exist, no matter how unimportant for the program in question they may be." *Mary Jo C.*, 707 F.3d at 159. "'Reasonable' is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce. This requires a fact-specific, case-by-case inquiry, not only into the benefits of the accommodation but into its costs as well." *Fulton*, 591 F.3d at 44 (internal quotation marks and citations omitted). "All that plaintiffs must do at the motion to dismiss stage is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Shaywitz v. Am. Bd. of*

- 14 -

*Psychiatry & Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (quotation marks and citations omitted).

**D.    Whether the Duration of Competition Rule is an "Essential Eligibility Requirement" Requires Factual Findings Unsuited for a Motion to Dismiss**

**1.    The Duration of Competition Rule**

The Duration of Competition Rule provides that "[a] pupil shall be eligible for senior high school athletic competition in a sport during each of four consecutive seasons of such sport commencing with the pupil's entry into the ninth grade and prior to graduation, except as otherwise provided. . . ." 8 NYCRR § 135.4(C)(7)(ii)(b)(1). The provision further provides that "[a] pupil enters competition in a given year when the pupil is a member of the team in the sport involved, and that team has completed at least one contest." *Id.* The Duration of Competition Rule provides some exceptions; for example, where the pupil has failed "to enter competition during one or more seasons of a sport" due to an "illness, accident, documented social/emotional condition, or documented social/emotional circumstances beyond the control of the pupil." *Id.* § 135.4(C)(7)(ii)(b)(1)(i). In addition, the regulation provides a waiver of the "four-year limitation" for "[a] student with a disability, as defined in section 4401 of the Education, Law, who has not yet graduated from high school," and who seeks eligibility for a "senior high school *noncontact* athletic competition." *Id.* § 135.4(C)(7)(ii)(d) (emphasis added). The regulation does not provide an exception or a waiver for a student, such as Plaintiff, who has entered competition during four consecutive seasons of a contact sport, such as basketball, but must attend a fifth year of high school for, what appears to be, any reason.

## 2. The Commissioner's Reliance on the Formal Legal Requirements of the Duration of Competition Rule is Misplaced

The Commissioner first argues that Plaintiff has failed to allege that he is a "qualified individual with a disability" because Plaintiff indisputably does not satisfy the four-year limitation within the Duration of Competition Rule. (Dkt. 46-1 at 6-9). However, this argument presupposes that the Duration of Competition Rule is not just a prerequisite for athletic eligibility, but is an *"essential* eligibility requirement" for competition. In response, Plaintiff argues that the Commissioner's position is contrary to the holding and rationale in *Mary Jo C.* (Dkt. 52 at 9-11). Given the procedural posture in which these arguments are presented, the Court is inclined to agree with Plaintiff.

In *Mary Jo C.*, the plaintiff alleged that she suffered from a mental illness that caused her to miss a filing deadline to apply for disability retirement benefits. 707 F.3d at 149-50. On a motion to dismiss for failure to state a claim, the district court "reasoned that because the filing deadline is deemed a condition precedent to eligibility under state law," the plaintiff's requested accommodation for a waiver of this filing rule was improper as a matter of law. *Id.* at 154. In reversing this aspect of the district court's decision, the Second Circuit held that "the term 'essential eligibility requirements' does not refer to all formal legal eligibility requirements." *Id.* at 156-57. The Second Circuit explained:

> Rather than simply deferring to the entity providing the service in question, deeming the rules as set by that entity as sacrosanct, and construing any modification of those rules as a fundamental alteration in the nature of the service, . . . [the ADA] require[s] us to analyze the importance of an eligibility requirement for a public program or benefit, rather than to defer automatically to whatever formal legal eligibility requirements may exist, no matter how unimportant for the program in question they may be.

*Id.* at 159 (internal quotation marks and citation omitted).

Although the Second Circuit declined to establish a definitive standard for determining whether a State law or regulation constitutes an "essential eligibility requirement," the court reversed the district court's grant of dismissal due to its unquestioning reliance upon the legitimacy of the state statute at issue. *See id.* at 160-61. Likewise, the Commissioner's blanket assertion that Plaintiff's failure to satisfy the Duration of Competition Rule warrants dismissal of this action does not curtail this Court's responsibility to determine whether the rule is "essential" to the administration of competitive high school interscholastic sports programs in this State. Such a determination generally requires a fact-specific analysis that is inappropriate for resolution on a motion to dismiss.

### 3. Whether the Duration of Competition Rule is "Essential" Requires Resolution of Factual Issues

At oral argument, the Commissioner posited that this Court could determine whether the Duration of Competition Rule is an "essential eligibility requirement" based upon the allegations in the amended complaint and without resolving factual issues. The Court notes that while there may be some instances where the "essential" nature of an eligibility requirement can be discerned as a matter of law, "the essentialness of an eligibility requirement generally need[s] a fact-specific inquiry." *Castellano*, 946 F. Supp. at 254. Indeed, the cases relied upon by the Commissioner are procedurally inapposite— these opinions addressed motions seeking injunctive relief. *See McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453 (6th Cir. 1997) (vacating preliminary injunction);

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026 (6th Cir. 1995) (dismissing in part due to mootness and reversing grant of preliminary injunction); *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926 (8th Cir. 1994) (reversing grant of preliminary injunction); *Reaves v. Mills*, 904 F. Supp. 120 (W.D.N.Y. 1995) (denying temporary restraining order).

In the analogous context of employment discrimination, an "essential function" of an occupation in question is also unquestionably a fact-specific inquiry in most cases. *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) ("[U]ltimately, the question whether a task constitutes an essential function depends on the totality of the circumstances."); *Colpoys v. County of Erie*, No. 12-CV-908S, 2013 WL 5437635, at *5 (W.D.N.Y. Sept. 27, 2013) (noting that the factors used to determine whether a job function is "essential" require a "fact-finding" analysis). In that context, "marginal" functions are excluded from the term "essential function," *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003); *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 127 (E.D.N.Y. 2014), just as "minor" eligibility requirements do not fall within the category of "essential eligibility requirements." *See Mary Jo C.*, 707 F.3d at 158 ("[S]ome relatively minor eligibility requirements, even if set by statute, will not be deemed essential because they will not be necessary to prevent the fundamental alteration of the program's nature.").

The Commissioner's additional argument that Plaintiff's requested waiver of the Duration of Competition Rule would create a "fundamental alteration" to the nature of interscholastic high school sports programs relies upon a separate but related analysis.

(Dkt. 46-1 at 11-14). As discussed above, a requested accommodation will not be deemed "reasonable" if it would "impose an 'undue hardship' on the operation of [the] program, or 'fundamentally alter the nature of the service, program, or activity.'" *Dean*, 804 F.3d at 186-87 (citations omitted). In this Circuit, "the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995); *see Mary Jo C.*, 707 F.3d at 153 (same). Since "the 'reasonableness' of an accommodation and the 'essentialness' of an eligibility requirement are inextricably intertwined and must be examined together," *Castellano*, 946 F. Supp. at 253, it is significant that "[t]he [ADA's implementing] regulations indicate that 'essential eligibility requirements' are those requirements *without which* the 'nature' of the program would be 'fundamentally alter[ed].'" *Mary Jo C.*, 707 F.3d at 158 (emphasis added) (quoting 28 C.F.R. § 35.130(b)(7)). In other words, although the waiver of an "essential eligibility requirement" would fundamentally alter the nature of a program or service and could never constitute a reasonable accommodation, *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001) ("To be sure, the waiver of an essential rule of competition for anyone would fundamentally alter the nature of [the] petitioner's tournaments."), a court must resolve factual issues in determining the impact of a given rule upon the nature of the program or service, as well as the financial and administrative burdens associated with a given requested accommodation.

Without a fact-specific inquiry into the purposes underlying the rule in question—juxtaposed with the nature of the program or service at issue—a court generally cannot determine whether a given eligibility requirement is "essential" for purposes of the ADA and Section 504. At oral argument, the Commissioner posited that the Duration of Competition Rule's waiver provisions constitute a built-in mechanism for the appropriate provision of requested "reasonable accommodations," and that this remedy is sufficient to satisfy the modification provisions of the ADA and Section 504. This argument does not withstand this Court's review. Indeed, as the Second Circuit stated in *Mary Jo C.*, "perhaps most fundamentally, reading 'essential eligibility requirements' to mean all formal legal eligibility requirements seems . . . to run counter to the ADA's broad remedial purpose by allowing states to insist that whatever legal requirements they may set are never subject to reasonable modification under Title II of the ADA." 707 F.3d at 160.

Accordingly, the Court rejects the Commissioner's argument that Plaintiff's failure to satisfy the Duration of Competition Rule prevents Plaintiff from plausibly alleging his status as a "qualified individual with a disability." As such, whether or not the Duration of Competition Rule is "essential" to the operation of interscholastic high school sports programs in this State is not appropriately decided on this motion. Likewise, the Commissioner's assertion that the requested waiver of the Duration of Competition Rule would create a fundamental alteration to the nature of interscholastic high school sports competitions is also premature. Indeed, in their papers and at oral argument, the parties themselves dispute the administrative hardship that would befall Defendants should a waiver be permitted. (*See* Dkt. 46-1 at 12; Dkt. 52 at 20, 22-23; *see also* Dkt. 54 at 22, 24).

Therefore, because the determination of whether the Duration of Competition Rule is an "essential eligibility requirement" and whether waiver of this rule may constitute a "reasonable accommodation," requires resolution of factual issues, the Commissioner's motion to dismiss is denied.

### 4. Plaintiff's Reasonable Accommodation Claim Does Not Require Defendants to Have Considered his Disability in Denying his Requested Modification

The Commissioner also appears to argue that because Plaintiff was not denied extended athletic eligibility *because of* his disability, his request for a waiver permitting a final year of high school varsity basketball is unreasonable as a matter of law. (Dkt. 46-1 at 13-14). Although "there must be some sort of causal connection between the [p]laintiff's disability and the requested accommodation," *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 367 (E.D.N.Y. 2012), a plaintiff need not allege facts indicating that an adverse action was motivated by his disability in order to state a prima facie reasonable accommodation claim. *Price v. City of N.Y.*, 797 F. Supp. 2d 219, 233 (E.D.N.Y. 2011); *see Scalera*, 848 F. Supp. 2d at 362 ("Since there is no discriminatory discharge or adverse employment element to [the plaintiff]'s claim, there is no burden on [the p]laintiff to show that her disability played any motivating role in [the defendant]'s failure to provide the requested accommodation."); *see also McPherson*, 119 F.3d at 460 ("[T]here are two methods that would allow the plaintiff to demonstrate that the [defendant]'s actions were taken because of his disability: either (1) by offering evidence that learning disabilities were actually considered by the [defendant] in formulating or implementing the eight-semester rule, or (2) by showing that the [defendant] could have reasonably accommodated

his disability, but refused to do so."). Notably, in the analogous employment context, the elements of a prima facie case of discrimination under the reasonable accommodation theory do not require the plaintiff to establish a specific causation element. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) ("In so-called reasonable-accommodation cases, such as this one, the plaintiff's burden requires a showing that (1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." (internal quotation marks and citations omitted)).

Here, Plaintiff's allegations permit a plausible inference that his disabilities were at least minimally connected to the requested accommodation. Plaintiff alleges that Defendants are qualifying entities for purposes of ADA and Section 504 liability (Dkt. 19 at ¶¶ 78-79, 88), that Defendants were aware of his disabilities, (*id.* at ¶ 56), that Plaintiff requested a reasonable accommodation to permit the extension of his athletic eligibility into his fifth year of high school (*id.* at ¶¶ 59, 61, 64), and that the requested modification has been refused (*id.* at ¶¶ 83, 91).. Importantly, Plaintiff alleges that his disability has caused him to unexpectedly require a fifth year of high school education. (*Id.* at ¶¶ 22-32). As such, the Court is permitted to draw the plausible inference that absent Plaintiff's alleged disabilities, his academic career would not have been stymied, and he would not have requested the accommodation at issue. *Dennin v. Conn. Interscholastic Athletic Conference, Inc.*, 913 F. Supp. 663, 669 (D. Conn.) ("[T]he fact that the *sole* reason that

[the plaintiff] is in school at nineteen is due to his disability. But for his disability, his fourth year of athletic participation . . . would not have been when he had become nineteen but at age eighteen."), *vacated as moot*, 94 F.3d 96 (2d Cir. 1996); *see also Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 849 (7th Cir. 1999) ("The 'by reason of' language merely indicates that he must establish that, but for his learning disability, he would have been eligible to play sports in his junior year. Simply stated, [the plaintiff] claims that his disability caused him to drop out of school; otherwise he would have been able to play high school basketball." (citation omitted)); *see generally Cavallaro by Cavallaro v. Ambach*, 575 F. Supp. 171, 175 (W.D.N.Y. 1983) (holding that the age-limitation rule could not be waived, but noting that if the plaintiff was "a physically handicapped individual a far different question would be presented."). Accordingly, because Plaintiff's allegations permit the Court to draw this reasonable inference, the Commissioner's causation argument fails.

> **5.    The Commissioner's Legislative Immunity Argument is More Appropriately Deemed a Motion To Strike and is Prematurely Raised**

The Commissioner argues that she is entitled to absolute legislative immunity because "[t]he Court cannot usurp [her] authority to promulgate regulations regarding the governance of interscholastic athletics in New York State public schools by enacting an emergency regulation, as requested by [Plaintiff]." (Dkt. 46-1 at 15). Indeed, paragraph three of Plaintiff's amended complaint requests that the Court "[o]rder [the Commissioner] to promptly promulgate an emergency regulation by which students with disabilities who, because of their disabilities, must attend high school for more than four years may request

extended athletic eligibility." (Dkt. 19 at 11). Although the Commissioner asserts this argument in her motion to dismiss, the Court finds that it is more properly deemed a motion to strike the third prayer for relief, and the Court will treat this argument as such. *See SRSNE Site Grp. v. Advance Coatings Co.*, No. 3:12-CV-443 VLB, 2014 WL 671317, at *1 (D. Conn. Feb. 21, 2014) ("[The Defendant] 'moves to dismiss' one of the forms of relief requested by Plaintiffs in Second Amended Complaint's Prayer for Relief. Such a motion is not properly a motion to dismiss and is more properly styled as a motion to strike, and the Court will treat it as a motion to strike.").

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored," *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010), and "the courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Plaintiff opposes the Commissioner's motion, arguing that he seeks not only an order requiring the promulgation of an emergency regulation, but also an order declaring the Commissioner's practices, policies, and procedures as discriminatorily applied to him, and enjoining the Commissioner from enforcing the Duration of Competition Rule against him. (Dkt. 52 at 25-26). Plaintiff also argues that the Commissioner's legislative immunity argument is prematurely made at the pre-discovery stage of this litigation. (*Id.* at 26-27).

"[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). "[C]laims for injunctive relief against defendant state officials, sued in their official

capacities, may be barred by the doctrine of legislative immunity. . . ." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 88 (2d Cir. 2007); *see Trammell v. Mantello*, No. 90-CV-382H, 1996 WL 863518, at *7 (W.D.N.Y. June 10, 1996) ("This immunity has been extended to federal, state and local agency officials acting in a legislative or quasi-legislative capacity." (citing *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979))). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Accordingly, officials outside the legislative branch may invoke legislative immunity when "they perform legislative functions" or acts that constitute "integral steps in the legislative process." *Id.* at 55.

However, "[a]t the motion to dismiss stage, plaintiffs need not prove that they are entitled to each form of relief sought, so long as they have adequately plead[ed] the underlying claim." *SRSNE Site Grp.*, 2014 WL 671317, at *2. "'[I]t need not appear that plaintiff can obtain the particular relief prayed for, as long as the court can ascertain that *some* relief may be granted.'" *The Ltd., Inc. v. McCrory Corp.*, 683 F. Supp. 387, 393 (S.D.N.Y. 1988) (quoting 5 Wright & Miller, Federal Practice and Procedure ¶ 1357, at 602 (1969)). Accordingly, "as motions to strike are generally disfavored and no prejudice to the [Commissioner] will result from allowing the prayer for relief to stand[ for now], [the Commissioner's] motion to strike is denied." *Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*, No. 06 CIV. 3915, 2008 WL 4179235, at *4 (S.D.N.Y. Sept. 10, 2008) (noting also that "it is not likely [that the plaintiff] will be able to establish that specific performance is warranted in this case"); *see also Lewis v. Byrnes*, 538 F. Supp. 1221, 1226

(S.D.N.Y. 1982) (finding that a motion to strike a prayer for equitable relief is "appropriate only in the very rare case"). This denial does not preclude the Commissioner from reasserting the doctrine of legislative immunity in a subsequent motion supported by a more fully developed argument. *See N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York*, No. 1:11-CV-1523 MAD/CRH, 2013 WL 3450383, at *7 (N.D.N.Y. July 9, 2013) ("'[T]he doctrine of legislative immunity is not uniquely asserted on motions to dismiss.'" (quoting *Moxley v. Town of Walkersville*, 601 F. Supp. 2d 648, 662 (D. Md. 2009))).

Therefore, for the foregoing reasons, the Commissioner's motion to dismiss is denied. The Court will now turn to Plaintiff's motion for a preliminary injunction.

## III. **Plaintiff's Motion for a Preliminary Injunction**

Plaintiff's arguments in support of his motion for a preliminary injunction appear before the Court at a very different procedural posture than those asserted in response to the Commissioner's motion to dismiss. In this context, the Court will review the factual submissions of the parties in determining whether the elements necessary for preliminary injunctive relief have been satisfied.

### A. **Legal Standards**

In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts in this Circuit generally permit a movant who

has established irreparable harm to demonstrate *either* "a likelihood of success on the merits, or . . . sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Able v. United States*, 44 F.3d 128, 130 (2d Cir. 1995) (quotation marks and citation omitted).

However, the Second Circuit has "held the movant to a heightened standard where: (i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir.) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)), *cert. dismissed sub nom. Allergan PLC v. New York ex. rel. Schneiderman*, 136 S. Ct. 581 (2015). "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." *Tom Doherty Assocs., Inc.*, 60 F.3d at 34. In such circumstances, "the moving party must show a 'clear' or 'substantial' likelihood of success." *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) (citation omitted). Moreover, the grant of preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## B. Irreparable Harm

Plaintiff argues that he will suffer irreparable harm without the benefit of a preliminary injunction enjoining Defendants from preventing him from participating on the 2017-2018 high school varsity basketball team. Specifically, Plaintiff argues that "[o]nce denied the opportunity to participate in basketball practices, scrimmages, and games, Plaintiff will never be able to have those opportunities again. No amount of financial compensation could reverse time and allow Plaintiff to join his teammates on the court during his senior year." (Dkt. 38-2 at 9). Defendants argue that Plaintiff has not demonstrated irreparable harm because he may pursue other opportunities to play basketball outside the District's interscholastic sports program (Dkt. 49 at 10), and that Plaintiff has no "fundamental right" to participate on the District's high school varsity basketball team (Dkt. 50 at 5-6).

Of course, the ADA and Section 504 do not apply solely to "fundamental rights." These statutes are intended to protect against discrimination in the provisioning of public services, programs, or activities in general. *See* 42 U.S.C. § 12132. Although claims arising under these statutes may implicate a "fundamental right," *see Tennessee v. Lane*, 541 U.S. 509, 524 (2004) ("Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, *including* systematic deprivations of fundamental rights." (emphasis added)), it is not a necessary prerequisite to suit in this instance. *Cf. Johnson v. S. Conn. State Univ.*, No. CIVA3:02-CV-2065 (CFD), 2004 WL 2377225, at *4 (D. Conn. Sept. 30, 2004) ("Thus, in the wake of *Lane*, it appears that a private suit *for money damages* under Title II of the ADA may be

maintained against a state only if the plaintiff can establish that the Title II violation involved a fundamental right." (emphasis added)).

Plaintiff has averred that sportsmanship has motivated him to engage his academic responsibilities despite the burden of his disabilities, and that his participation in interscholastic sports has provided beneficial social experiences with his teammates. (*See* Dkt. 38-3 at 5); *Dennin*, 913 F. Supp. at 667 ("[The p]laintiff's competition on the swim team has increased his self-esteem and social skills."). Indeed, there is much to be said of the substantial value in participating in one's final year of high school in athletics alongside one's peers. *See Dennin*, 913 F. Supp. at 667 ("The swim season is progressing. Meets are occurring and are not awaiting a decision here. Accordingly, [the] plaintiffs have established irreparable harm that cannot be compensated by monetary damages nor recouped.").

Nonetheless, the Court need not decide whether Plaintiff satisfies the irreparable harm prong of the analysis because the Court finds that Plaintiff has failed to carry his burden of demonstrating a clear or substantial likelihood of success on the merits. *See Lyon v. Ill. High Sch. Ass'n*, No. 13 C 173, 2013 WL 309205, at *5 (N.D. Ill. Jan. 25, 2013) ("The Court finds [the plaintiff]'s argument that playing high school sports is a once in lifetime opportunity more persuasive. However, in light of the Court's finding that [the plaintiff] is unable to establish a likelihood of success on the merits, the Court need not determine whether his allegations are sufficient to establish irreparable harm."); *see also Cavallaro*, 575 F. Supp. at 174 (assuming that the "inability to participate in inter-

scholastic wrestling in [the plaintiff's] Senior year will cause him irreparable injury" and proceeding to the second prong to evaluate the merits).

### C.    Plaintiff has not Demonstrated a Clear or Substantial Likelihood of Success on the Merits

Because Plaintiff requests a "mandatory injunction," he must satisfy the "heightened standard" of establishing a "clear" or "substantial" likelihood of success on the merits of his action. *See Actavis PLC*, 787 F.3d at 650. The Court notes that Plaintiff's notice of motion requests an injunction "enjoining Defendants from denying Plaintiff extended athletic eligibility for the 2017-2018 basketball season." (Dkt. 38 at 1). However, "many mandatory injunctions can be stated in seemingly prohibitory terms." *Tom Doherty Assocs., Inc.*, 60 F.3d at 34. Indeed, Plaintiff's motion requests that the Court order Defendants to *grant* Plaintiff extended athletic eligibility status and waive the requirements of the Duration of Competition Rule as a reasonable accommodation pursuant to the ADA and Section 504. (*See* Dkt. 38-2 at 18; Dkt. 54 at 28). Notably, Plaintiff has so far been *denied* extended athletic eligibility (*see* Dkt. 19 at ¶¶ 53-74), and thus, Plaintiff's requested injunctive relief would inherently require a "positive action" that will "alter the status quo" between the parties. *See Tom Doherty Assocs., Inc.*, 60 F.3d at 34.

In reviewing the parties' factual submissions, the Court concludes that Plaintiff has failed to carry his burden on this motion. Plaintiff has not established a clear or substantial likelihood of success because the Duration of Competition Rule is likely an "essential eligibility requirement," and Plaintiff's requested waiver of this rule is not likely to be a reasonable accommodation because it would fundamentally alter the nature of competition.

### 1. *Washington* is Not Persuasive

Although Plaintiff's reply papers rely heavily on the Seventh Circuit's opinion in *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840 (7th Cir. 1999), in support of his motion (Dkt. 54 at 13, 18, 23-24), the Court does not find *Washington* persuasive given the facts at issue here. In *Washington*, the plaintiff continually received failing grades and eventually dropped out of school for a full academic year during high school. 181 F.3d at 842. The plaintiff was later diagnosed with a learning disability. *Id.* Upon his re-enrollment in high school, the plaintiff was denied the right to participate on his high school basketball team because eight semesters had passed since he first enrolled. *Id.* at 842-43. At the time, the Indiana High School Athletic Association's rules limited student athletic eligibility to the first eight semesters following their enrollment into the 9th grade. *See id.* at 842. The Seventh Circuit affirmed the district court's grant of a preliminary injunction, finding that the waiver of the eight-semester rule would not cause a fundamental alteration to the purpose of the rule or give rise to administrative and financial burdens in the plaintiff's circumstance. *See id.* at 852.

The Seventh Circuit was "particularly persuaded with [the] plaintiff's claims because the . . . eight semester rule provided that a student was only eligible for eight consecutive semesters and those semesters started to run on the student's first day of ninth grade regardless of whether the student was actually enrolled in school after that time." *Lyon v. Ill. High Sch. Ass'n*, No. 13-CV-173 (HDL), 2013 WL 309205, at *4 (N.D. Ill. Jan. 25, 2013) (citing *Washington*, 181 F.3d at 852). Indeed, the Seventh Circuit distinguished *McPherson v. Mich. High School Athletic Ass'n*, 119 F.3d 453 (6th Cir. 1997)—which

came to a different conclusion—due to this fact. *See Washington*, 181 F.3d at 852 (noting that the Michigan rule interpreted by the Sixth Circuit differed from the Indiana rule in a "very material respect" insofar as the Michigan rule "restrict[ed] eligibility to eight semesters of *enrollment*," whereas "the eligibility 'clock' . . . continues to 'tick' when a student drops out of school" under the Indiana rule).

Here, the Duration of Competition Rule only counts seasons against the pupil if they have "enter[ed] competition" within the meaning of the regulation. *See* 8 NYCRR § 135.4(C)(7)(ii)(b)(1). Accordingly, if a student with a disability is unable to participate for a season in a contact sport due to his disability, that season may not count against the pupil as long as the regulatory factors are satisfied. *See id.* § 135.4(C)(7)(ii)(b)(1)(i). Thus, the regulation at issue here is more akin to the Michigan rule, which required actual enrollment in academia than the Indiana rule, which continued to count semesters against the student without exception.

Under facts more similar to the case at hand, the *Lyon* court distinguished *Washington* and found that the plaintiff failed to establish a likelihood of success on the merits of demonstrating that he was "otherwise qualified" under Section 504. *See Lyon*, 2013 WL 309205, at *5. In *Lyon*, the plaintiff had participated in interscholastic wrestling for each of his four years at high school, and it was by virtue of this fact that he became ineligible for a fifth year of wrestling, "regardless of whether he has a disability." *Id.* In other words, since the plaintiff was never ineligible to participate in competitive wrestling as a result of his disability, he could not seek a reasonable modification to the four-year consecutive participation rule at issue. *Id.* The *Lyon* court's rationale was clear: "[I]f the

[c]ourt were to allow [the plaintiff] to wrestle for a fifth year, despite the fact that he has already wrestled for four years, this would in effect be granting a privilege to [the plaintiff] that other students, disabled or not, do not enjoy. This belies the purpose of the ADA." *Id.*

The Court agrees with the *Lyon* court's rationale and finds those facts to be applicable to the facts at issue in the instant matter. Plaintiff was denied extended athletic eligibility due to a neutral rule that would have prevented him from participating in an additional year of competitive high school basketball regardless of whether he suffered a disability or not. In other words, the application of the Duration of Competition Rule would lead to the same result had one of Plaintiff's non-disabled peers sought extended eligibility after participating in four consecutive seasons of basketball. Accordingly, Plaintiff's reasonable accommodation request does not simply seek to secure the same opportunities as his non-disabled peers; rather, this request seeks an additional benefit over and beyond what is contemplated by the ADA and Section 504. (*See* Dkt. 54 at 18 ("[T]he Supreme Court has contemplated the contention that to grant a reasonable accommodation may provide an individual with 'more.'")).

2.      **Plaintiff is Not Entitled to "More" Opportunities Than His Peers**

Plaintiff attempts to circumvent this conclusion by citing to *Teahan v. Metro-North R. Co.*, 951 F.2d 511 (2d Cir. 1991) and *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). The Court finds both cases inapposite. Plaintiff relies upon *Teahan* for the proposition that a generally applicable rule—such as the Duration of Competition Rule—does not obviate Defendants from their obligation to provide a reasonable accommodation for his disability. (*See* Dkt. 54 at 15-16). *Teahan* involved an employment termination based upon the

plaintiff's "absenteeism." *See Teahan*, 951 F.2d at 513. However, the plaintiff was absent only because he was suffering from alcoholism. *Id.* at 515. The Second Circuit held that "termination by an employer subject to the [the Rehabilitation Act] which is justified as being due to absenteeism shown to be caused by substance abuse is termination 'solely by reason of' that substance abuse for purposes of § 504." *Id.* at 517. In other words, although the adverse action was facially based on a neutral reason, the ultimate cause to that action was the disability itself and the general applicability of the rule was irrelevant.

In the instant matter, Plaintiff has not submitted any evidence that the Duration of Competition Rule has not been neutrally applied in this case. As noted above, Plaintiff was denied extended athletic eligibility because he had already entered competition in high school basketball for at least four consecutive years. Plaintiff's ineligibility was not a result of his disability, it was due to the fact that he, like any other student, entered competition each and every year of his high school career—in spite of his alleged disabling impairments.

Plaintiff also appears to suggest that an individual with a disability is entitled to preferential treatment over-and-above the benefits afforded to his peers. (*See* Dkt. 54 at 18). Although Plaintiff relies upon *Barnett* in asserting this argument, *Barnett* does not support Plaintiff's position. *Barnett* indicates that "preferences will sometimes prove necessary to achieve the [ADA]'s basic equal opportunity goal," but the Supreme Court carefully stated that reasonable accommodations are necessary so that "those with disabilities [can] obtain the *same* . . . opportunities that those without disabilities automatically enjoy." *Id.* at 397. According to the Second Circuit:

The ADA serves the important function of ensuring that people with disabilities are given the *same opportunities* and are able to enjoy the *same benefits* as other Americans. The ADA mandates reasonable accommodation of people with disabilities in order to put them on an *even playing field* with the non-disabled; it does *not* authorize a preference for disabled people generally.

*Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) (emphases added) (citing *Barnett*, 535 U.S. 391).

Plaintiff's disability did not prevent him from entering competition in any one of the four consecutive years he participated in high school basketball. This fact is undisputed. Certainly, Plaintiff is correct that some degree of preferential treatment will inevitably be required to even the playing field between disabled and non-disabled individuals. Such an outcome is necessary to achieve the laudable goals of the ADA. However, the ADA's remedial purpose is to ensure that individuals, such as Plaintiff, have the "same opportunities" enjoyed by non-disabled individuals. *Felix*, 324 F.3d at 107. To reiterate, under the Duration of Competition Rule, if a non-disabled student participated in four consecutive seasons of basketball, but was required to complete a fifth year of scholastics for whatever reason, that student would be equally ineligible to participate in varsity basketball during his fifth year of high school. Plaintiff is entitled to no more, nor any less.

### 3. The Rationale in *McPherson* and the Age-Limit Cases Are Applicable

Defendants posit that this Court should follow the Sixth Circuit's decision in *McPherson*. (Dkt. 49 at 16-18; Dkt. 50 at 10). As noted above, *McPherson* involved an eight-semester rule determining the athletic eligibility of students. *McPherson*, 119 F.3d

at 455. In *McPherson*, the plaintiff was forced to repeat the 11th grade due to poor grades, and thus, by the time the plaintiff proceeded to the 12th grade, he had already been enrolled in eight semesters of high school education. *Id.* at 456. The plaintiff was subsequently diagnosed with attention deficit hyperactivity disorder. *Id.* The Sixth Circuit ultimately held that waiver of the eight-semester rule "would work a fundamental alteration in Michigan high school sports programs." *Id.* at 462. This conclusion was supported by the Sixth Circuit's prior conclusion in *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026 (6th Cir. 1995), which held that a complete waiver of the 18-year age-restriction rule would constitute a fundamental alteration under the ADA and Section 504. *Id.* at 1035. *McPherson* determined that there was "no principled distinction between the nature and purpose of the age-limit rule and the eight-semester rule." *McPherson*, 119 F.3d at 461. Specifically, the Sixth Circuit stated:

> both are intended to limit the level of athletic experience and range of skills of the players in order to create a more even playing field for the competitors, to limit the size and physical maturity of high school athletes for the safety of all participants, and to afford the players who observe the age-limit rule and the eight-semester rule, presumably athletes of less maturity, a fair opportunity to compete for playing time. In addition, the [defendant] here produced evidence that the absence of an eight-semester rule could lead to widespread red-shirting abuses. . . .

*Id.* at 461-62.

This rationale carries significant weight considering this District's prior precedent, which has held that the waiver of the New York State age-restriction rule would work a fundamental alteration to high school sports programs in the State. In *Reaves v. Mills*, 904 F. Supp. 120 (W.D.N.Y. 1995), the plaintiff claimed that the defendants "discriminatorily

denied her request that the age limitation applicable to participating in interscholastic sports be waived to accommodate [her son's] disability." *Id.* at 122. United States District Judge Michael A. Telesca rejected this argument noting that the restriction was "based upon a student's *age*, not his or her mental abilities," and therefore, the rule was "applied uniformly among the student population regardless of whether a student has a mental disability." *Id.* In fact, the plaintiff had "fully participated in interscholastic sports . . . even while laboring under his alleged disability" and was "only barred from playing sports once he turned nineteen." *Id.* The Court finds that the rationale and result in *Reaves* are equally applicable to the instant matter.

Plaintiff argues, generally, that the Duration of Competition Rule may be waived for some students with disabilities, and thus, the rule is not an "essential eligibility requirement." (Dkt. 54 at 14). However, the regulation requires that those students have not participated in one or more seasons due to their disabilities before any exception may be applied in the context of a contact sport. *See* 8 NYCRR § 135.4(C)(7)(ii)(b)(1). Furthermore, while the regulation provides a waiver for noncontact sports, *see id.* § 135.4(C)(7)(ii)(d), no similar waiver is found pertaining to contact sports. *Cf. Dennin*, 913 F. Supp. at 670 n.1 ("[The defendant] has in place a waiver mechanism for eligibility requirements. There is no limitation on which rules are waivable."). Plaintiff has also provided no evidence that other students "similarly situated" to himself have been granted the type of waiver he now requests as a reasonable accommodation. *Cf. Bingham v. Ore. Sch. Activities Ass'n*, 24 F. Supp. 2d 1110, 1116 (D. Or. 1998) ("Although [the] defendant argues that [the] plaintiff should not be granted a waiver of the Eight Semester Rule

because he has actually attended school and been eligible to participate in athletics for the full eight semesters, evidence was introduced that a similarly situated student was nonetheless granted a waiver of the Eight Semester Rule after she had attended school and participated or was eligible to participate in athletics for eight semesters."). In addition, it appears inconsistent for Plaintiff to argue that the present waiver conditions represent a "narrow exception" and are "rarely applicable" (Dkt. 38-2 at 6; Dkt. 52 at 12), and simultaneously that the existence of these provisions "strongly suggest" that the Duration of Competition Rule is not an "essential eligibility requirement" (Dkt. 54 at 14).

### 4. It is Unlikely that Waiver of the Duration of Competition Rule Would Constitute a "Reasonable Accommodation"

The Duration of Competition Rule is designed to

1) prevent older and/or more experienced athletes from gaining an advantage over younger athlete[s]; 2) for safety reasons in sports where a decided advantage in physical maturity may lead to injury of younger participants; 3) to level the playing field so there are no more experienced players playing against those who are less experienced; and 4) it is to ensure other athletes have the same opportunity to participate. It also prevents against the abuse of red shirting whereby students are held back or are declared ineligible to participate for a year and then allowed to play during their fifth year.

(Dkt. 49 at 8; *see* Dkt. 48 at ¶¶ 15-17). The harms sought to be prevented by this rule are similar to those targeted by the age-restriction rules. *See McPherson*, 119 F.3d 453, 461-62 (finding that the "purposes served by" the eight-semester rule and the age-limit rule "are largely the same"); *see also Cavallaro*, 575 F. Supp. at 175 ("The reason for an age limitation in inter-scholastic athletics is obviously to prevent older more experienced athletes from gaining an advantage over younger ones."). Accordingly, to hold that one rule is "essential" while the other is not would quickly lead to inconsistent results.

Plaintiff argues that, as applied to him, the Duration of Competition Rule should not be considered an "essential eligibility requirement" because the stated purposes of the rule do not apply to his individual circumstances. (Dkt. 38-2 at 13-15). Specifically, Plaintiff argues that he has only just turned 18 years old during this academic year, he has remained the same height and weight as he was during the previous season, his extended eligibility request is not an attempt at "red shirting," he is not a safety risk, and he would not displace other student athletes as he would only take the position of an "extra player" on the basketball team. (*See id.*; Dkt. 54 at 8).

However, Plaintiff gives short shrift to the "importance of the requirement to the program in question." *Mary Jo C.*, 707 F.3d at 157. The Duration of Competition Rule is a "core component" to high school interscholastic sports in New York State. *See Castellano*, 946 F. Supp. at 254; *see also* Dkt. 48 at ¶¶ 15-17. A contrary holding would likely open the flood gates to innumerable eligibility challenges by students who have already participated to the fullest extent permitted under the regulation. *See McPherson*, 119 F.3d at 462 ("The plaintiff would have us require waivers for all learning-disabled students who remain in school more than eight semesters. That, of course, would have the potential of opening floodgates for waivers, while until now, there have been only a handful of cases deemed appropriate for waivers. Assessing one or two students pales in comparison to the task of assessing a large number of students; an increase in number will both increase the cost of making the assessments, as well as increase the importance of doing so correctly."). Such an outcome would impose an undue hardship upon the

administration of interscholastic high school sports programs, and would threaten to fundamentally alter the nature of these competitions.

Plaintiff argues that any such administrative burden would be minimal, and that NYSPHSAA already performs an "individual analysis for students requesting use of special devices and prosthesis, religious accommodations, or other special accommodations." (Dkt. 54 at 22-23). However, such evaluations do not appear internally inconsistent with the stated purposes of the Duration of Competition Rule, in contrast to Plaintiff's approach.

Safety is of critical importance to the regulation in question. (Dkt. 48 at ¶ 15). An individualized approach would require administrative findings upon the safety and physicality of each student applicant at the micro-level. The calculus would likely differ between one sport and another, depending upon the risks involved. Furthermore, administrators would be tasked with evaluating the specific height and weight differentials between the student applicant and the athlete pool. This review would have to account for *all* athletes, including those in competing school districts. Although the Duration of Competition Rule's waiver provision appears to contemplate "an assessment of the student's level of physical development and maturity," as well as a determination of whether the student's participation would "present a safety or health concern," this inquiry pertains only to the safety and health of "such student." *See* 8 NYCRR § 135.4(C)(7)(ii)(d)(1)(iii).

Noncontact sports may be absent certain risks to others, but the physicality of each student applicant compared to all other students on competing teams, as well as any

- 40 -

attendant safety issues, would significantly weigh upon the effective administration of this program. The extent of the inquiry requested by Plaintiff would be especially important in cases, such as this one, which pertain to contact sports and athletes that maintain above-average athletic skills. *Cf. Dennin*, 913 F. Supp. at 669 (noting that the plaintiff "is, without dispute, always the slowest swimmer in the pool" and that "[s]wimming is not a contact sport"); *see* Dkt. 48 at 4 (averring that Plaintiff was "selectively classified" for participation in basketball in the 8th grade because "he was an exceptional athlete"). This task would not only devolve into a calculation of inches and pounds, but would also likely entail a subjective orientation of the student's relative skill level, as Plaintiff asks this Court to do here. (Dkt. 38-2 at 13-15; Dkt. 54 at 9; *see* Dkt. 55 at 1, 4-6, 30).

The Court finds that the significant variance of such considerations would likely place an "undue hardship" on Defendants' administration of the interscholastic high school sports program. Indeed, even Plaintiff's purported placement as an "extra" player requires additional inquiry. Jeff Limoncelli, the Head Coach of the varsity basketball team, averred that there is "no limit to the number of players on the team" (Dkt. 38-3 at 112), and that he "plan[s]" to keep a "standard 12 player roster" for the upcoming season, with Plaintiff "added as a 13th player" (Dkt. 55 at 32). However, Plaintiff, citing to NYSPHSAA's rules, indicates that a team can have no more than 16 players. (Dkt. 54 at 8; *see also* Dkt 48 at ¶ 45 (noting that the number of athletes on a team is limited)). Limoncelli does not indicate whether he generally maintains "extra players" in his roster, but it does appear that the potential for at least one additional "extra player" would be removed under the rules noted by Plaintiff himself. Whether this fact is material may be dependent upon the nature of the

sport, the quality of the competitions, the coach's preferential rotation system, or any number of other variables.

Therefore, the Court finds that Plaintiff is not likely to succeed in establishing that the Duration of Competition Rule is not an "essential eligibility requirement," and that the request to waive this requirement is a "reasonable accommodation" because it would impose an "undue hardship on the operation" of the interscholastic high school sports program, and would "fundamentally alter [its] nature." *Dean*, 804 F.3d at 186-87 (quotation marks and citations omitted); *see McPherson*, 119 F.3d at 461-62; *Lyon*, 2013 WL 309205, at *5; *Reaves*, 904 F. Supp. at 122.

### 5.     The Preemption Doctrine is Not Implicated by This Matter

Lastly, the Court will briefly address Plaintiff's suggestion that federal preemption is appropriate here. Plaintiff argues that "[t]he Commissioner's eligibility regulation at issue here is at odds with the reasonable accommodation mandate of the ADA, as strict application of the regulation means that a student, like [himself], cannot have a fifth year of eligibility as an accommodation." (Dkt. 54 at 9). As a result, Plaintiff argues that this Court should determine that the Duration of Competition Rule is preempted by the ADA under the Supremacy Clause of the United States Constitution. (*Id.*).

The Court disagrees with this circular argument. As noted above, the ADA does not require public entities "to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee*, 700 F.3d at 641. Requested accommodations that "impose an 'undue hardship' on the operation of [a public entities'] program or fundamentally alter[] the nature of the service, program, or activity" may be

rejected without violating the ADA or Section 504. *See Dean*, 804 F.3d at 186-87 (citations omitted). To the extent that Plaintiff relies upon *Mary Jo C.* in asserting a separate preemption attack upon this regulation, the Court finds Plaintiff's interpretation of *Mary Jo C.* to be incorrect. *Mary Jo C.* simply "conclude[d] that the ADA's reasonable modification requirement contemplates modification to state laws, thereby permitting preemption of inconsistent state laws, *when necessary to effectuate Title II's reasonable modification provision.*" *Id.* at 163 (emphasis added). Thus, preemption of inconsistent state laws is only warranted where the law would otherwise prevent the application of a *reasonable* accommodation. In other words, the ADA does not preempt state laws simply because an accommodation is denied as unreasonable; if the accommodation requested would impose an "undue hardship" or would "fundamentally alter[] the nature of the service, program, or activity," the preemption doctrine is inapplicable. Here, because the Court determines that Plaintiff's requested accommodation—a waiver of what is likely an "essential eligibility requirement"—is not likely to be determined to be "reasonable," any assertion of preemption is misdirected.

Therefore, the Court concludes that Plaintiff has not demonstrated a "clear" or "substantial" likelihood of success on the merits of this action, and thus, his motion for a preliminary injunction is denied.

## CONCLUSION

For the foregoing reasons, the Commissioner's (Dkt. 46) motion to dismiss is denied, and Plaintiff's (Dkt. 38) motion for a preliminary injunction is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     December 4, 2017
           Rochester, New York