UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
MAR 1 5 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

BREWSTER MARSHALL,

**DECISION AND ORDER**

Plaintiff,

6:17-CV-06310 EAW

v.

NEW YORK STATE PUBLIC HIGH
SCHOOL ATHLETIC ASSOCIATION,
INC., SECTION IV OF NEW YORK
PUBLIC HIGH SCHOOL ATHLETIC
ASSOCIATION, INC., and MARYELLEN
ELIA, in her official capacity as
Commissioner of Education of the State
Of New York,

Defendants.

## INTRODUCTION & BACKGROUND

This action was commenced on May 17, 2017, on behalf of Brewster Marshall

("Plaintiff"), who suffers from postural orthostatic tachycardia syndrome as well as other

ailments, and who was a high school student within the Horseheads Central School District

(the "District"). (Dkt. 1). Plaintiff has since reached the age of majority and has been

substituted as the new party plaintiff. (Dkt. 58 at 1 n.1; *see* Dkt. 57). On August 23, 2017,

Plaintiff filed an amended complaint, alleging that Maryellen Elia, in her official capacity

as Commissioner of Education of the State of New York (the "Commissioner"), the New

York State Public High School Athletic Association, Inc., and Section IV of the New York

Public High School Athletic Association, Inc. ("Section IV") (collectively, "Defendants")

unlawfully denied him extended athletic eligibility to play a fifth consecutive year of high school basketball in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"). (*See* Dkt. 19 at 9-11). On December 4, 2017, this Court issued a Decision and Order denying Plaintiff's motion for a preliminary injunction and denying the Commissioner's motion to dismiss. (Dkt. 58). Plaintiff has since filed a second amended complaint (the "SAC"), which remains the operative pleading in this action, and seeks compensatory damages as well as declaratory and injunctive relief. (Dkt. 81). All Defendants have answered the SAC. (Dkt. 84; Dkt. 87; Dkt. 88).

On June 15, 2018, the Commissioner filed a motion to dismiss the SAC or, in the alternative, a motion for judgment on the pleadings. (Dkt. 89). Specifically, the Commissioner contends that Plaintiff's requests for declaratory and injunctive relief should be dismissed as moot because the 2017-2018 basketball season is over and Plaintiff is preparing to graduate,[1] and that the rest of Plaintiff's action be dismissed based on the doctrines of absolute judicial immunity and absolute legislative immunity. (Dkt. 89-1 at 4-10). In the alternative, the Commissioner contends that Plaintiff has failed to state a claim for compensatory damages under Section 504 because Plaintiff has insufficiently

---

[1]     According to the Commissioner, Plaintiff's high school graduation was scheduled for June 23, 2018. (Dkt. 89-1 at 5-6). The SAC alleges that Plaintiff was engaged in his "final year in high school" (Dkt. 81 at ¶ 1), and Plaintiff does not refute the Commissioner's contention that the 2017-2018 basketball season is over and that his graduation was imminent (*see* Dkt. 89-1 at 5-6; Dkt. 93 at 6-8 (arguing that Plaintiff's claims are not mooted by his graduation)). As of the date of this Decision and Order, it appears based upon a plain reading of the allegations in the SAC that Plaintiff has graduated.

alleged that the Commissioner intentionally discriminated against him, and that Plaintiff's ADA claim for money damages should be dismissed based on sovereign immunity. (*Id.* at 10-15). Plaintiff opposes the Commissioner's motion in all respects, but he concedes that "compensatory damages pursuant to the ADA are not available to him from a state defendant like [the Commissioner]." (Dkt. 93 at 11 n.2).

The Court assumes familiarity with the underlying facts of this litigation, which are described in more detail in the Court's December 4, 2017, Decision and Order. (Dkt. 58). For the following reasons, the Commissioner's motion to dismiss the SAC (Dkt. 89) is granted in part and denied in part.

## DISCUSSION

### I.  The Commissioner's Motion to Dismiss Pursuant to Rule 12(b)(1)

#### A.  Legal Standard

Federal courts are courts of limited jurisdiction and possess only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The party asserting jurisdiction bears the burden of establishing that a court has jurisdiction over a particular claim. *Id.* When a movant challenges subject matter jurisdiction, a district court may "consider affidavits and other materials beyond the pleadings" and "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Iqbal v. Sec'y, U.S. Dep't of Homeland Sec.*, 190 F. Supp. 3d 322, 326-27 (W.D.N.Y. 2016) (citations omitted). Although "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.

2000), "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

## B.  Plaintiff's Requests for Declaratory and Injunctive Relief are Moot

"The mootness doctrine is rooted in the 'case or controversy' requirement of Article III of the Constitution, which describes 'the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.'" *Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*, 583 F. Supp. 2d 422, 428 (W.D.N.Y. 2008) (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001)). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

The Commissioner argues that Plaintiff's requests for declaratory and injunctive relief are moot because "the 2017-2018 basketball season has concluded and the [P]laintiff is in his final school year." (Dkt. 89-1 at 5). The Commissioner also states that Plaintiff's "graduation after five years of school is imminent as the Horseheads High School Graduation is to be held on June 23, 2018." (*Id.* at 5-6). Plaintiff does not submit any evidence or argument refuting these factual assertions. Instead, Plaintiff contends that because "it is functionally impossible for a student, like Plaintiff, to have his claim heard before graduation or the end of the athletic season renders that claim moot[,] . . . the extraordinary remedy of mandatory injunction" is required in this context. (Dkt. 93 at

- 4 -

7-8).[2] Plaintiff also argues that because "[i]t is likely that another student will find him or herself in a situation analogous to Plaintiff's, and would then benefit from a declaratory judgment stating that Defendant's policies, procedures and practices have subjected Plaintiff to discrimination in violation of the ADA and Section 504," Plaintiff's request for declaratory relief is not mooted by his graduation. (*Id.* at 8).

"The Declaratory Judgment Act permits declaratory relief only in 'a case of actual controversy.'" *Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d 702, 703 (S.D.N.Y. 1999) (quoting 28 U.S.C. § 2201(a)). This statute incorporates "the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996). As such, "[t]he Declaratory Judgment Act is properly invoked where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 454 (S.D.N.Y. 2015) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The dispute must "admi[t] of specific

---

[2]     While Plaintiff also argues that his request for compensatory damages is not rendered moot (Dkt. 93 at 6-7), the Commissioner does not contend that the monetary remedies asserted in the SAC are moot (*see* Dkt. 89-1 at 6 (claiming that "all claims for declaratory and injunctive relief should be dismissed"); *but see id.* at 4 (stating that "Plaintiff's lawsuit is moot")). To the extent the Commissioner's motion could be construed as requesting that the entire action be dismissed as moot, the Court rejects this proposition because Plaintiff's request for compensatory damages creates a live "case and controversy" between the parties. *See Orozco by Arroyo v. Sobol*, 703 F. Supp. 1113, 1117 (S.D.N.Y. 1989) ("Plaintiff correctly notes that a claim for damages remains viable even though claims for injunctive or declaratory relief are deemed moot." (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969))).

relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)). In other words, "where 'the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.'" *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994) (quoting *Browning Debenture Holders' Comm. v. Dasa Corp.*, 524 F.2d 811, 817 (2d Cir. 1975)).

Plaintiff correctly asserts that the Second Circuit has recognized "certain circumstances [where] it may be possible for a claim for declaratory relief to survive, notwithstanding the mootness of a companion claim for an injunction." *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996), *abrogated on other grounds as recognized by Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). "Issuing a declaratory judgment in an otherwise moot case is only appropriate when the 'behavior complained of is of such a nature that it might predictably be repeated again,' in which case 'a prior declaratory judgment may serve the useful purpose of facilitating an injunction at a future date.'" *62-64 Kenyon St. Hartford, LLC v. City of Hartford*, No. 3:16-CV-00617(VAB), 2017 WL 20911, at *4 (D. Conn. Jan. 2, 2017) (quoting *Browning Debenture Holders' Comm.*, 524 F.2d at 816). Nonetheless, Plaintiff's position that this principle applies to this case is misplaced.

Plaintiff contends that "another student" or "future students" may find a favorable declaratory judgment rendered in this case, as between Plaintiff and Defendants, beneficial

to combatting a hypothetical instance of analogous discriminatory conduct under the ADA and Section 504. (Dkt. 93 at 8). While this Court's issuance of a declaratory judgment of the kind requested by Plaintiff may very well establish favorable precedent for other students in similar scenarios, doing so in this case would be tantamount to an advisory opinion. *See generally Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 212-13 (2000) ("A court may not proceed to hear an action if, subsequent to its initiation, the dispute loses 'its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law.'" (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969))).

Here, there is no live case or controversy between *the parties to this action* that would permit this Court to issue the declaratory or injunctive relief requested in the SAC. *See, e.g., Tamplenizza*, 32 F. Supp. 2d at 703-04 (plaintiff lacked a substantial controversy warranting declaratory judgment related to a mandatory arbitration agreement where he failed to allege that "he or any other securities customer" had filed securities fraud claims "or plans to do so in the immediate future" and merely sought an order "advising him of his right to choose the forum in which he *may or may not bring suit* at some *undisclosed time in the future*") (emphasis added). As the Second Circuit explained in *Browning Debenture Holders' Committee*, declaratory relief is inappropriate where "the remedy sought is a mere declaration of law without implications for practical enforcement upon *the parties*." 524 F.2d at 817 (emphasis added). Here, Plaintiff requests the Court to determine that his declaratory relief is not mooted because it may benefit other non-party students during some hypothetical future litigation. However, because Plaintiff's alleged

- 7 -

injury will not be addressed by any such decree, "the remedy sought is a mere declaration of law" and is subject to dismissal. *Id.*

"[S]tudents' declaratory and injunctive claims against the universities that they attend are mooted by the graduation of the students, because after their graduation and absent a claim for damages, 'it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Fox*, 42 F.3d at 140 (quoting *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993)); *see Cook*, 992 F.2d at 19 ("We agree with Colgate that the end of the ice hockey season and the graduation of the last of the plaintiffs render this action moot."). Plaintiff further suggests that it is not possible for his claims or those of any other student in analogous circumstances to receive legal recourse before the athletic season ends or graduation occurs, and thus it is "functionally impossible" for such claims requesting injunctive and declaratory relief to be addressed in time. *(See* Dkt. 93 at 7-8). In reviewing this argument in tandem with Plaintiff's position that other students would benefit from a favorable declaratory judgment, it appears Plaintiff attempts to invoke the exception to the mootness doctrine recognized for situations "capable of repetition, yet evading review." *See generally Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) ("A moot case may still be justiciable, however, if the underlying dispute is 'capable of repetition, yet evading review.'" (quoting *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998))).

"The exception, however, 'applies only in exceptional situations,' where two circumstances are 'simultaneously present[.]'" *Lillbask ex rel. Mauclaire v. State of Conn.*

*Dep't of Educ.*, 397 F.3d 77, 85 (2d Cir. 2005) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

> In the absence of a class action, the "capable of repetition, yet evading review" exception will not be applied unless "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again."

*Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir. 1997) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). The Court acknowledges that Plaintiff—and likely other students in similar circumstances—must indeed work under a "finite period of time between ripeness of the claim following the final [administrative] appeal decision and mootness of the claim once an athletic season has ended." (*See* Dkt. 93 at 8). Nonetheless, Plaintiff provides no reason for this Court to expect that "the same complaining party would be subjected to the same action again." *See Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 802 (2d Cir. 1990) ("This exception requires *at least the possibility* that the 'same complaining party would be subjected to the same action again.'" (emphasis added) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975))).

Plaintiff does not suggest that he will ever again be subject to the challenged policies at issue, but instead, he speculates that unidentified students in the future may benefit from the declaratory judgment he seeks in this action. (Dkt. 93 at 8); *see Cook*, 992 F.2d at 20 (declining to apply the "capable of repetition, yet evading review" exception where "there has been no suggestion that [the defendant's] policies will be visited upon any one of [the complaining parties] in the future"); *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir. 1992) (stating that the "capable of repetition, yet evading review"

exception "does not apply when the issue might recur in someone else's case, but not the plaintiff's"); *Gomes v. R.I. Interscholastic League*, 604 F.2d 733, 736 (1st Cir. 1979) ("There remains no live controversy between [the plaintiff] and [the] defendants: the volleyball season is over and [the plaintiff], having graduated, will never again attempt to play in interscholastic high school competition."). Furthermore, while "a student's claim may not be rendered moot by graduation if he or she sued in a 'representational capacity' as the leader of a student organization," *Cook*, 992 F.2d at 20, Plaintiff has not alleged that he is suing in a representational capacity on behalf of other students (*see* Dkt. 81); *Mincone v. Nassau Cty. Cmty. Coll.*, 923 F. Supp. 398, 403 (E.D.N.Y. 1996) (finding the plaintiff's claims moot where there was no suggestion in the complaint that he was "suing in a representational capacity on behalf of 'similarly situated' individuals"). In other words, Plaintiff "may not litigate the claims of students unnamed and unrepresented in this action." *Cook*, 992 F.2d at 20.

Therefore, because Plaintiff no longer holds a legally cognizable interest in the outcome of his requests for declaratory and injunctive relief, they are dismissed as moot.

## C. The Commissioner has Failed to Establish the Applicability of the Doctrine of Absolute Judicial Immunity

Issues of absolute immunity are properly considered under Rule 12(b)(1). *See Robinson v. Jarris*, No. 1:07-CV-265, 2008 WL 3979260, at *5 (D. Vt. Aug. 25, 2008) ("Absolute immunity would bar this Court's jurisdiction, resulting in dismissal under Fed. R. Civ. P. 12(b)(1)."). "Judicial and quasi-judicial immunity are both absolute immunities." *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009), *certified question answered*,

304 Conn. 234 (2012). "Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority. . . ." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988). "The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.'" *Parent v. New York*, 786 F. Supp. 2d 516, 535 (N.D.N.Y. 2011) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)), *aff'd*, 485 F. App'x 500 (2d Cir. 2012).

> [J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. . . . Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted).

The Second Circuit has advised that "absolute immunity is of a 'rare and exceptional character.'" *City of Providence, Rhode Island v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 46 (2d Cir. 2017) (quoting *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir. 1986)), *cert. denied sub nom. BATS Glob. Mkts., Inc. v. City of Providence, R.I.*, 139 S. Ct. 341 (2018). As such, "courts must examine the invocation of absolute immunity on a case-by-case basis, and the party asserting immunity bears the burden of demonstrating its entitlement to it." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (citation omitted); *see Victory v. Pataki*, 814 F.3d 47, 65-66 (2d Cir. 2016), *as amended* (Feb. 24, 2016) ("Most executive officials receive only qualified immunity, and the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." (quotation and citations omitted)).

"The Supreme Court has set forth a 'functional' approach to determine whether a particular individual is entitled to quasi-judicial immunity." *Gross*, 585 F.3d at 88. Factors "characteristic of the judicial process" that are used in applying this doctrine include:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger*, 474 U.S. at 202. "Because the approach is functional rather than titular, an official may be absolutely immune from liability with respect to certain functions of his job, but enjoy only qualified immunity as to others." *Gyadu v. Workers' Comp. Comm'n*, 930 F. Supp. 738, 748 (D. Conn. 1996); *see Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir. 1987) ("If the official acts adjudicatively, the official probably has absolute immunity. If the official acts executively, the official probably has qualified, good-faith immunity."); *see also Stump v. Sparkman*, 435 U.S. 349, 362 (1978) ("The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i. e., whether it is a function normally performed by a judge, and to the expectations of the parties, i. e., whether they dealt with the judge in his judicial capacity."). Accordingly, a court "must conduct 'some factual inquiry' to determine if the duties of the defendants were judicial[,] . . . which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." *Victory*, 814 F.3d at 66 (quoting *Stewart*, 832 F.2d at 13).

In support of her motion, the Commissioner relies upon *Cross v. King*, No. 14-CV-7394 (SJF) (SIL), 2015 WL 6438819 (E.D.N.Y. Oct. 22, 2015), which found that the Office of the New York State Commissioner of Education, "whose function includes the authority 'to examine and decide' petitions challenging school board elections and meetings and who is authorized to render 'decisions in the matter [that] shall be final and not subject to review,' is likewise 'functionally comparable' to that of a judge." *Id.* at *3 (quoting N.Y. Educ. Law §§ 310, 2037). The Commissioner argues that because an application to extend Plaintiff's athletic eligibility was filed and then proceeded through the administrative review process, the Commissioner's order denying Plaintiff's participation during the 2017-2018 basketball season was a judicial or quasi-judicial act that warrants absolute immunity from all claims arising from that determination. (*See* Dkt. 89-1 at 7-9; Dkt. 94 at 10-11).

"Plaintiff does not dispute that [the Commissioner's] role in determining the outcome of his appeal pursuant to Education Law § 310 was a judicial action." (Dkt. 93 at 9). However, Plaintiff argues that quasi-judicial immunity should not apply because "this lawsuit does not challenge the validity of Defendants['] appeal determination, nor does it make any claims regarding Education Law § 310." (*Id.* at 9-10). Plaintiff further contends that because the Commissioner "has never made a determination regarding Plaintiff's request for a reasonable accommodation to the extended eligibility policy, and . . . has taken the position that she is not legally obligated to do so," the Commissioner "cannot be judicially immune from suit regarding a decision that has not been made. . . ." (*Id.* at 10).

- 13 -

The Commissioner offers no assessment of the "functional approach" outlined above. Her papers are devoid of any comparative discussion of her role in reviewing an administrative appeal such as Plaintiff's and the functional role of judges. Instead, the Commissioner primarily relies upon *Cross*, but this lone case is insufficient by itself to demonstrate the applicability of the "rare and exceptional" doctrine of absolute quasi-judicial immunity.

Indeed, the facts at issue in *Cross* are manifestly distinct from those presented here. In *Cross*, the court addressed the plaintiff's claim that the Commissioner had improperly "removed her from her seat" from a school board in violation of due process. *Id.* at *1. New York Education Law vests the Commissioner with the authority to resolve "[a]ll disputes concerning the validity of any district meeting or election or any of the acts of the officers of such meeting or election," and provides that the Commissioner's "decisions in the matter shall be final and not subject to review." N.Y. Educ. Law § 2037. In determining that the Commissioner's role was "'functionally comparable' to that of a judge," the *Cross* court found this language persuasive, at least in the context of "petitions challenging school board elections and meetings." *See Cross*, 2015 WL 6438819, at *3. By comparison, the Commissioner's regulation establishing the four-year athletic eligibility standard (hereinafter, the "Duration of Competition Rule")[3] does not clearly

---

[3] The Duration of Competition Rule provides:

A pupil shall be eligible for senior high school athletic competition in a sport during each of four consecutive seasons of such sport commencing with the pupil's entry into the ninth grade and prior to graduation, except as otherwise provided in this subclause, or except as authorized by a waiver granted under

explain the type of appellate process afforded to a student seeking to contest an unfavorable athletic eligibility determination. *See* 8 NYCRR § 135.4(C)(7)(ii)(b)(1)(iii).

"The cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location." *Butz v. Economou*, 438 U.S. 478, 512 (1978). Moreover, "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Id.* Such safeguards include "[t]he insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, . . . the correctability of error on appeal, . . . [and] the rigors of cross-examination and the penalty of perjury" imposed upon witnesses. *Id.* Because the question of "[w]hether non-judicial officers merit quasi-judicial absolute immunity depends upon 'the functional comparability of their judgments to those of the judge,'" *Young v. Selsky*,

---

clause (d) of this subparagraph to a student with a disability. If a board of education has adopted a policy, pursuant to subclause (a)(4) of this subparagraph, to permit pupils in the seventh and eighth grades to compete in senior high school athletic competition, such pupils shall be eligible for competition during five consecutive seasons of a sport commencing with the pupil's entry into the eighth grade, or six consecutive seasons of a sport commencing with the pupil's entry into the seventh grade. A pupil enters competition in a given year when the pupil is a member of the team in the sport involved, and that team has completed at least one contest. A pupil shall be eligible for interschool competition in grades 9, 10, 11 and 12 until the last day of the school year in which he or she attains the age of 19, except as otherwise provided in subclause (a)(4) or clause (d) of this subparagraph, or in this subclause. The eligibility for competition of a pupil who has not attained the age of 19 years prior to July 1st may be extended under the following circumstances.

8 NYCRR § 135.4(C)(7)(ii)(b)(1).

41 F.3d 47, 51 (2d Cir. 1994) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)), the Commissioner's failure to set forth the similarities between her role in declining to address Plaintiff's requested accommodation and the role of a judge is reason alone to reject her argument, *see generally DeRosa v. Bell*, 24 F. Supp. 2d 252, 256-57 (D. Conn. 1998) (noting that the plaintiff did not enjoy "any of the safeguard features that make the hearing stage facially similar to a judicial proceeding" where "the [c]ommissioner made her decision based on a report prepared by a sister agency and reviewed by her staff, a police report, her staff members' recommendations and the sworn statement of one witness, obtained by one of the staff members"); *cf. Rolon v. Henneman*, 389 F. Supp. 2d 517, 520 (S.D.N.Y. 2005) (stating that "[l]ike judicial proceedings, the arbitration proceedings at issue incorporated the requisite procedural safeguards," such as appearance by counsel, an opportunity to present evidence and to cross examine witnesses, a neutral arbitrator, and the ability to submit argument), *aff'd*, 517 F.3d 140 (2d Cir. 2008); *Johnson v. Kelsh*, 664 F. Supp. 162, 165 (S.D.N.Y. 1987) ("Parole revocation hearings are administrative in nature but they have many of the indicia of judicial proceedings[,] . . . such as written notice of claimed violations; disclosure to the parolee of evidence against him; an opportunity to confront and cross examine adverse witnesses; a neutral and detached hearing officer; and a written statement by factfinders of evidence relied upon and reasons for revoking parole. . . ."); *Ackerman v. State Bd. for Prof'l Med. Conduct*, No. 83 CIV. 7871 (DNE), 1984 WL 1258, at *3 (S.D.N.Y. Nov. 13, 1984) (finding the proceedings "adversarial in nature" where "[t]he licensee is entitled to offer oral or written evidence on his behalf and to cross-examine witnesses and examine evidence produced against him, a stenographic

record of the hearings is required, and the licensee is entitled to know the findings and conclusions on all issues of fact and law").

To this point, it appears the Commissioner never rendered *any* decision regarding Plaintiff's request for an accommodation. *See Williams v. Trimble*, 527 F. Supp. 910, 912 (S.D.N.Y. 1981) ("[T]hat [the defendant] felt no need to make a 'finding or conclusion' as to [the plaintiff's] constitutional contentions[] also indicates that [the defendant] was not acting in the formal judicial context alluded to in *Butz*."). The Court already rejected the Commissioner's position that the Duration of Competition Rule's waiver provisions constitute a built-in mechanism that satisfies the modification provisions of the ADA and Section 504—at least at this stage of these proceedings and without further fact-specific inquiry into the purposes underlying the rule. (Dkt. 58 at 20). As such, the Court cannot determine based upon this record that the resolution of the administrative appeal process provided for under the Duration of Competition Rule constitutes a "judicial act" upon the issues contested in this case.

Furthermore, the Commissioner's argument suffers from an illogical weakness. The Commissioner takes the position that ADA and Section 504 claims are not appropriately raised on administrative appeal. (*See* Dkt. 58 at 8-9). Thus, if the Court were to conclude that the Commissioner is absolutely immune from ADA or Section 504 causes of action by simply affirming the decision not to permit extended athletic eligibility under the Duration of Competition Rule, there would be little recourse for plaintiffs to challenge the Commissioner's compliance with these two federal statutes in this context.

- 17 -

Plaintiff does not challenge the validity of the Commissioner's decision to deny him extended athletic eligibility under the Duration of Competition Rule; rather, Plaintiff challenges the Commissioner's failure to provide a reasonable accommodation to that regulation pursuant to the ADA and Section 504. (Dkt. 93 at 9-10). Plaintiff alleges that he "requested extended athletic eligibility for contact athletics as a reasonable modification under the ADA" and has "received no response to this reasonable modification request." (Dkt. 81 at ¶¶ 59-60). To be sure, "[c]ourts in this Circuit and others have found judicial immunity to extend to claims under the ADA." *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, No. 5:17-CV-1186 (GLS/TWD), 2018 WL 2108282, at \*4 (N.D.N.Y. Apr. 9, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 2108187 (N.D.N.Y. May 7, 2018). Nevertheless, these decisions are inapposite and involve "[a] judge's control of ongoing proceedings and managing the court's docket," *Richter v. Conn. Judicial Branch*, No. 3:12CV1638 (JBA), 2014 WL 1281444, at \*10 (D. Conn. Mar. 27, 2014), *aff'd*, 600 F. App'x 804 (2d Cir. 2015), court orders "issued by a Family Court judge in response to the serious accusations raised in a Family Offense petition," *Positano v. New York*, No. 12-CV-2288 (ADS) (AKT), 2013 WL 880329, at \*4 (E.D.N.Y. Mar. 7, 2013), and the issuance of protective orders, setting bail, sentencing a convicted defendant, and a judge's decision to decline to recuse himself, *see Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 712-714 (S.D.N.Y. 2011); *see also Goldblatt v. Doerty*, 503 F. App'x 537, 537 (9th Cir. 2013) (affirming the district court's dismissal of claims "regarding defendant's alleged denial of ADA accommodations because they arose out of defendant's rulings in his capacity as a judge presiding over a state court family law proceeding").

The doctrine of absolute judicial immunity is intended "to protect 'the independent and impartial exercise of judgment vital to the judiciary [which] might be impaired by exposure to potential damages liability.'" *McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993)), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester v. White*, 484 U.S. 219, 226-27 (1988). Accordingly, the doctrine is intended to "shield" officials acting in a judicial capacity from monetary damages for actions taken in their official capacity. *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see DiPasquale v. Milin*, 303 F. Supp. 2d 430, 431 (S.D.N.Y. 2004) ("By its very nature, the doctrine of judicial immunity . . . operates to shield judges acting in their official capacity."). Here, the Commissioner does not assert the doctrine as a defensive guard against liability for a decision rendered, but instead, brandishes it as a sword to beat back its responsibility under federal law to respond to Plaintiff's modification request. The Commissioner's request for absolute quasi-judicial immunity would likely turn the doctrine on its head.

Therefore, under the facts and circumstances of this case, and at the motion to dismiss stage of these proceedings, the Commissioner has failed to carry her burden of demonstrating that the application of absolute quasi-judicial immunity is appropriate.

## D. The Commissioner has Failed to Establish the Applicability of the Doctrine of Absolute Legislative Immunity

Like absolute judicial or quasi-judicial immunity, "[c]ourts apply a functional test to determine whether an act is legislative. . . ." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 701 (S.D.N.Y. 2011). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). "Under the Supreme Court's functional test for determining the applicability of absolute legislative immunity, 'whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question.'" *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 82 (2d Cir. 2007) (quoting *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007)). "Legislative immunity shields from suit not only legislators, but also officials in the executive and judicial branches when they are acting 'in a legislative capacity.'" *Id.* (quoting *Bogan*, 523 U.S. at 55).

"In making the determination whether an act, or a course of conduct, is within the 'sphere of legitimate legislative activity,' two factors are relevant." *Schubert*, 775 F. Supp. 2d at 701.

> First, it is relevant whether the defendants' actions were legislative "in form," i.e., whether they were "integral steps in the legislative process." Second, it may also be relevant whether defendants' actions were legislative "in substance," i.e., whether the actions "bore all the hallmarks of traditional legislation," including whether they "reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities of the [government] and the services the [government] provides to its constituents."

*Rowland*, 494 F.3d at 89 (alterations in original) (citation omitted) (quoting *Bogan*, 523 U.S. at 55-56).

Conduct properly characterized as "administrative acts" is not shielded by absolute legislative immunity. *See Alfaro v. Labador*, No. 06-CV-1470(JS)(WDW), 2007 WL 9710118, at *6 (E.D.N.Y. Mar. 28, 2007) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003)); *see Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 491 (S.D.N.Y. 2015) ("Legislative immunity does not apply to administrative acts or the enforcement of existing laws, ordinances, or regulations."); *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 558 (D. Conn. 2008) ("[L]egislative officials may . . . be liable for their enforcement and administrative actions."). "[B]road, prospective policymaking . . . is characteristic of legislative action," *Harhay*, 323 F.3d at 211, while "actions aimed at one person and one situation are not," *Alfaro*, 2007 WL 9710118, at *6.

The Commissioner argues, as she did on her previous motion, that she has absolute legislative immunity from suit in this action "[t]o the extent that the SAC alleges that [her] 'athletic eligibility rules' discriminated against the [P]laintiff." (Dkt. 89-1 at 9). While the Commissioner acknowledges that the Court previously rejected this argument, allowing her to reassert it "in a subsequent motion supported by a more fully developed argument" (Dkt. 58 at 26), the Commissioner's motion papers provide little if any additional reason for this Court to apply the doctrine of absolute legislative immunity to the facts presented (*compare* Dkt. 89-1 at 9-10, *with* Dkt. 46-1 at 15-16). Plaintiff argues that the Court should apply the law of the case doctrine and once again reject the Commissioner's legislative

immunity arguments because they simply rehash the same position the Court previously found unpersuasive. (Dkt. 93 at 10-11 & n.1). In reply, the Commissioner contends that Plaintiff is "attacking [her] athletic eligibility regulations" in an attempt to raise ADA and Section 504 violations. (Dkt. 94 at 9).

Plaintiff's claims for monetary damages do not challenge the validity or applicability of the Duration of Eligibility Rule.[4] Rather, Plaintiff challenges Defendants' alleged failure to provide a "reasonable modification" to the Duration of Competition Rule pursuant to the ADA and Section 504. (*See* Dkt. 81 at ¶¶ 82 (alleging that his requested "[e]xtended contact sport athletic eligibility . . . is a reasonable modification of the existing rules under the ADA because it does not frustrate the purpose of the four year eligibility standard"), 90 (alleging the same but under Section 504)). As such, the challenged conduct alleged here is the Commissioner's refusal to provide a reasonable accommodation under the ADA or Section 504, not the promulgation of the Duration of Competition Rule itself or any perceived failure to amend it.

---

[4]     A different conclusion might have been reached if Plaintiff's declaratory and injunctive relief survived. Indeed, Plaintiff requests that the Court order the Commissioner "to *promptly promulgate an emergency regulation* by which students with disabilities who, because of their disabilities, must attend high school for more than four years may request extended athletic eligibility." (Dkt. 81 at 11 (emphasis added)). However, because Plaintiff's requests for injunctive and declaratory relief are moot, the Court has no occasion to determine whether this request for relief should be struck under the absolute quasi-legislative immunity doctrine. *Cf. Supreme Court of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 733-34 (1980) (stating that "there is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committee, or members for refusing to amend the Code[,] . . . the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity").

Furthermore, "the question of whether a measure to accommodate a student's disability is a reasonable accommodation" is "fact-specific" and requires a "case-by-case" determination. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015) (quoting *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 384 (2d Cir. 1996)). Accordingly, the Commissioner's inaction constituted a constructive denial of Plaintiff's request and appears more akin to an administrative act applicable to a single individual. *See Harhay*, 323 F.3d at 211 ("The Board members are not entitled to absolute legislative immunity because their acts were not quintessentially legislative, but rather were part of a process by which an employment situation regarding a *single individual* was involved." (emphasis added)); *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, No. 09 CV 5195 (DRH) (ETB), 2012 WL 1392365, at \*16 (E.D.N.Y. Apr. 23, 2012) (determining that an "individual assessment" of a single application for a special use permit was not legislative in nature); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 701 (S.D.N.Y. 2011) (noting that the defendants "did not engage in some broad policy debate about *changing or enacting*" regulations, and instead their "alleged actions involved existing land-use policies *as applied to a single resident*" (emphases added)); *Ruston v. Town Bd. for Town of Skaneateles*, No. 5:06-CV-927(FJS/GHL), 2009 WL 3199194, at \*4 (N.D.N.Y. Sept. 30, 2009) (stating that "courts have distinguished between situations where a single issue relevant to a single individual is resolved and a 'broad, prospective policymaking that is characteristic of legislative action'" (quoting *Almonte*, 478 F.3d at 108)), *aff'd*, 610 F.3d 55 (2d Cir. 2010); *Massaro v. Allingtown Fire Dist.*, No. CIV. 3:02CV537(PCD), 2002 WL 32500871, at \*3 (D. Conn. Nov. 22, 2002) ("[A]s a general

- 23 -

proposition[,] decisions limited to one individual are characterized as administrative rather than legislative."); *accord Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 23 (1st Cir. 1992) ("If the action involves establishment of a general policy, it is legislative; if the action single[s] out specifiable individuals and affect[s] them differently from others, it is administrative.").

"The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). Although the Court's earlier decision did not preclude the Commissioner from raising the doctrine of absolute legislative immunity upon a "more fully developed argument" (Dkt. 58 at 26), the Commissioner's papers fail to present a more robust rationale in support of the application of this doctrine (*see* Dkt. 89-1 at 9-10; Dkt. 94 at 9). The Commissioner does not provide any argument as to why her decision to decline consideration of Plaintiff's requested accommodation is more akin to "broad, prospective policymaking" than it is simply her own interpretation of the Duration of Competition Rule as applied to Plaintiff's circumstances. To the extent the Commissioner relies upon the regulation itself as grounds for the denial of Plaintiff's requested modification, as noted above, this position involves factual matters not suited for resolution on a motion to dismiss. As the Court previously stated, "[w]ithout a *fact-specific inquiry* into the purposes underlying the rule in question—juxtaposed with the nature of the program or service at issue—a court generally cannot determine whether a given eligibility requirement is 'essential' for purposes of the ADA and Section 504." (Dkt. 58 at 20).

- 24 -

In sum, the Commissioner has failed to assert any reason—let along a "cogent" or "compelling" one—for this Court to depart from its previous decision to refrain from applying the doctrine of legislative immunity at this stage of these proceedings.

## II.     The Commissioner's Motion for Judgment on the Pleadings

### A.     Legal Standard

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen*

- 25 -

*v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## B.    Plaintiff's ADA Claim is Dismissed as Against the Commissioner

Although the parties do not address the vitality of Plaintiff's ADA claim for compensatory damages in great detail, the Court feels compelled to acknowledge the unsettled state of the law regarding the application of sovereign immunity to Title II monetary claims.

"The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean*, 804 F.3d at 193. "Congress can abrogate a State's sovereign immunity if it seeks to enforce the 'substantive guarantees' of the Fourteenth Amendment." *Colon v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15 CIV. 7432 (NSR), 2017 WL 4157372, at *6 (S.D.N.Y. Sept. 15, 2017) (quoting *Tennessee v. Lane*, 541 U.S. 509, 518 (2004)).

"In enacting the ADA, Congress 'invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment. . . .'" *United States v. Georgia*, 546 U.S. 151, 154 (2006) (quoting 42 U.S.C. § 12101(b)(4)). Because Congress also provided that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter," *see* 42 U.S.C. § 12202, Congress has unequivocally expressed its "intent to abrogate state sovereign immunity," *Georgia*, 546 U.S. at 154; *see Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010) ("Congress has unambiguously purported to abrogate states' immunity from Title II claims."); *Kearney v. N.Y.S. D.O.C.S.*, No. 9:11-CV-1281 GTS/TWD, 2013 WL 5437372, at *9 (N.D.N.Y. Sept. 27, 2013) ("With respect to claims arising under Title II of the ADA, it is clear from the language of the statute that Congress fully intended to abrogate state sovereign immunity, thus satisfying the 'unequivocal intent' requirement." (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 108 (2d Cir. 2001))), *aff'd sub nom. Kearney v. N.Y. State Dep't of Corr. Servs.*, 581 F. App'x 45 (2d Cir. 2014). Furthermore, "[a] plaintiff's ability to sue a state under Title II is tied to the plaintiff's allegation that the defendants violated his Fourteenth Amendment rights." *Kearney v. Adams*, No. 9:15-CV-824 (GLS/CFH), 2018 WL 3121618, at *10 (N.D.N.Y. Feb. 8, 2018) (citing *Georgia*, 546 U.S. at 154), *report and recommendation adopted*, 2018 WL 1470579 (N.D.N.Y. Mar. 26, 2018). In other words, the law clearly permits a plaintiff to "sue a state under Title II if the violation alleged is also a violation of the Fourteenth Amendment." *Rosen v. Pallito*, No. 2:13-CV-277, 2017 WL 6513663, at *3 (D. Vt. Dec. 19, 2017).

Nonetheless, there is "a growing fracture among the district courts in this Circuit in their approach to determining whether Congress validly abrogated state sovereign immunity under Title II of the ADA." *Dean*, 804 F.3d at 193. "Before *United States v. Georgia*, the Second Circuit applied the approach articulated in *Garcia v. S.U.N.Y. Health Sciences Center*, which held that 'Congress had exceeded its section five authority in enacting Title II, but that Title II suits could be limited to circumstances in which it had not.'" *Rosen*, 2017 WL 6513663, at *3 (quoting *Bolmer*, 594 F.3d at 146). The *Garcia* court limited Title II monetary claims brought against the states to those where the plaintiff could "establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability." 280 F.3d at 111. However, the Second Circuit has acknowledged that the Supreme Court's decision in *Georgia* "concerning the constitutionality of Congress's abrogation of Eleventh Amendment immunity under Title II calls *Garcia*'s validity into question." *Dean*, 804 F.3d at 194.

In *Georgia*, the Supreme Court explained that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. at 159. The Court then remanded the action, stating that it was "unclear whether [the plaintiff's] amended complaint will assert Title II claims premised on conduct that does *not* independently violate the Fourteenth Amendment." *Id.* The Court required the lower courts to determine, in the first instance:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth

Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* "Thus, *Georgia* explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment." *Dean*, 804 F.3d at 194.

As a result, some district courts in this Circuit still apply *Garcia* while "[o]thers, adopting the approach in *Georgia*, determine whether Congress's purported abrogation of immunity for conduct that violates Title II but not the Fourteenth Amendment is nevertheless valid." *Id.* at 194-95 (footnote omitted). While the Second Circuit has not directly spoken on this issue, it has advised that district courts should "at a minimum, evaluate whether the approach erected in *Georgia* applies." *Id.* at 195.

Neither party mentions the apparent rift in opinion among the district courts in this Circuit. The Commissioner argues that Plaintiff's "ADA claim for money damages is barred by sovereign immunity" because Plaintiff has not and could not allege an "actual violation of the Fourteenth Amendment" in this case. (Dkt. 89-1 at 13-14). Plaintiff has "concede[d] that compensatory damages pursuant to the ADA are not available to him from a state defendant like" the Commissioner. (Dkt. 93 at 11 n.2). Accordingly, the Court dismisses the remaining Title II claim for monetary damages as against the Commissioner based on Plaintiff's concession. In doing so, the Court does not reach the constitutional question of whether Title II validly abrogates state sovereignty for misconduct that does not also violate the Fourteenth Amendment. *See generally Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of

judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

## C. The Commissioner Does Not Have Sovereign Immunity from Plaintiff's Section 504 Monetary Claim

Despite the similarities between claims brought pursuant to Title II of the ADA and Section 504, Plaintiff's Section 504 claim for compensatory damages is not subject to the same sovereign immunity questions addressed above.[5] Plaintiff alleges that "Defendants receive federal financial assistance" (Dkt. 81 at ¶ 88), and the Commissioner has not refuted this allegation. In *Garcia*, the Second Circuit found that the plaintiff's "§ 504 damage claim against New York fails because New York had not knowingly waived its sovereign immunity from suit." *Garcia*, 280 F.3d at 114-15 (footnote omitted). However, several courts have found that "New York, by accepting federal funds after the *Garcia* decision, has waived sovereign immunity for damage suits brought under section 504 of the Rehabilitation Act of 1973." *Alexander v. State Univ. of N.Y. at Buffalo*, 932 F. Supp. 2d 437, 443 (W.D.N.Y. 2013); *see, e.g., Blasio v. N.Y. State Dep't of Corr. Servs.*, No. 04-CV-653S, 2005 WL 2133601, at *3 (W.D.N.Y. Aug. 31, 2005) ("By continuing to accept federal funds after *Garcia*, however, New York knowingly waived its immunity for Rehabilitation Act claims, which are based on post-*Garcia* events."). Therefore, because the actions alleged in this matter all took place years after the Second Circuit's decision in

---

[5] The Court addresses this issue merely for the sake of completeness as the Commissioner does not argue that she is immune from Plaintiff's Section 504 monetary claim on this ground.

*Garcia*, there is no question that the Commissioner does not enjoy sovereign immunity from the Section 504 monetary claims alleged here.

The Court turns to the Commissioner's argument that Plaintiff has failed to sufficiently allege an "intentional violation" of Section 504. (Dkt. 89-1 at 10-13).

## D. Plaintiff has Sufficiently Alleged "Deliberate Indifference"

"A plaintiff aggrieved by a violation of [Section 504] may seek all remedies available under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*), including monetary damages." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009). In order to allege Section 504 claims for money damages, a plaintiff must allege "intentional violations" of the Rehabilitation Act. *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999). "The standard for intentional violations is 'deliberate indifference to the strong likelihood [of] a violation[.]'" *Loeffler*, 582 F.3d at 275 (quoting *Bartlett*, 156 F.3d at 331); *see Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 89 (2d Cir.) ("In order to recover monetary damages under the Rehabilitation Act . . ., [a] plaintiff would need to show that any violation resulted from 'deliberate indifference' to the rights the disabled enjoy under the Act." (citing *Garcia*, 280 F.3d at 115)), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004); *see Parks v. Blanchette*, 144 F. Supp. 3d 282, 338 n.36 (D. Conn. 2015) (same).

"In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will." *Alexander*, 932 F. Supp. 2d at 443 (quoting *Bartlett*, 156 F.3d at 331). "Plaintiffs need only plead intentional discrimination, which 'may be inferred when a policymaker acted with at least deliberate

- 31 -

indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom.'" *Felix v. City of New York*, 344 F. Supp. 3d 644, 664-65 (S.D.N.Y. 2018) (quoting *Loeffler*, 582 F.3d at 275). "[A] plaintiff demonstrates deliberate indifference by pointing to evidence [that] the 'official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately.'" *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 657 (S.D.N.Y. 2017) (quoting *Gershanow v. Cty. of Rockland*, 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014)). "A defendant's actions must demonstrate 'deliberate choice . . . rather than negligence or bureaucratic inaction.'" *Id.* (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)); *see also Loeffler*, 582 F.3d at 276 (stating that "[i]n a separate context, we have also said that deliberate indifference must be a 'deliberate choice[,] rather than negligence or bureaucratic inaction'" (quoting *Reynolds*, 506 F.3d at 193)).

In support of her motion, the Commissioner argues that the SAC fails to allege that she "acted with deliberate indifference to a strong likelihood that a violation of federally protected rights would result from the implementation of the [Duration of Competition Rule] and administrative review process." (Dkt. 89-1 at 11). The Commissioner quotes a number of cases that stand for the proposition that accommodations must be reasonable and need not be granted if they would fundamentally alter the service provided or would impose significant financial or administrative strains upon the public entity. (*Id.* at 11-12). Once again, the Commissioner falls back on her position that the application of this

regulation sufficiently discharges her federal obligations. As this Court has reiterated several times now, these arguments require a "fact-specific inquiry" into the nature and purpose of the Duration of Competition Rule. "Indeed, 'deliberate indifference will often be a fact-laden question, for which bright line rules are ill-suited.'" *Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*, No. 15-CV-2572 (PKC) (PK), 2018 WL 1747038, at *3 (E.D.N.Y. Apr. 11, 2018) (quoting *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 398 (E.D.N.Y. 2005)).

In response, Plaintiff argues that the SAC sufficiently alleges deliberate indifference to proceed past the pleadings stage of these proceedings. (Dkt. 93 at 12-15). The SAC states that the District filed an application to Section IV seeking extended athletic eligibility on Plaintiff's behalf. (Dkt. 81 at ¶ 53). Although "Plaintiff requested extended athletic eligibility for contact athletics as a reasonable modification under the ADA" (*id.* at ¶ 59), he never received any response to this request (*id.* at ¶ 60). Subsequently, the District filed a second application to Section IV, "which [also] included a request for reasonable accommodation under the ADA on behalf of Plaintiff." (*Id.* at ¶ 61). Section IV denied this request as well and "did not address nor acknowledge Plaintiff's request for reasonable accommodation under the ADA." (*Id.* at ¶¶ 62-63). An appeal was taken from this denial, which "explicitly requested a reasonable modification of the eligibility rules in order to accommodate Plaintiff's disability." (*Id.* at ¶ 64). However, Section IV's decision was affirmed, again without addressing or acknowledging Plaintiff's requested accommodation. (*Id.* at ¶¶ 65-66). Plaintiff further alleges that "the [Commissioner] has repeatedly and consistently held that 'an appeal to the Commissioner is not the proper

forum in which to raise alleged violations of the ADA.'" (*Id.* at ¶ 69). Plaintiff claims that Defendants have violated Section 504 and "have discriminated and continue to discriminate against [him] by refusing to grant his request for reasonable modification of their athletic eligibility rules." (*Id.* at ¶ 91).

"[K]nowledge that an individual has a disability and a failure to offer an accommodation is not sufficient to establish deliberate indifference." *Viera v. City of New York*, No. 15 CIV. 5430 (PGG), 2018 WL 4762257, at \*17 (S.D.N.Y. Sept. 30, 2018). Instead, the "indifference" must "have been so pervasive as to amount to a choice." *Loeffler*, 582 F.3d at 277. However, "deliberate indifference can be found when the defendant's response to known discrimination 'is clearly unreasonable in light of the known circumstances.'" *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (quoting *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)); *see Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476S, 2017 WL 6512858, at \*6 (W.D.N.Y. Dec. 20, 2017) (same). Moreover, "[i]t is not necessary to prove that the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken 'maliciously or sadistically for the very purpose of causing harm.'" *Gant*, 195 F.3d at 141 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Viewing Plaintiff's SAC in the light most favorable to him, and drawing all reasonable inferences in his favor from the facts alleged therein, the Court cannot say that Plaintiff has failed to allege deliberate indifference as a matter of law. Although many of Plaintiff's factual assertions are based upon Defendants' alleged failure to address his

requested accommodation pursuant to the ADA, because "the standards for actions" under Title II of the ADA and Section 504 "are generally equivalent" and are analyzed together, *see Dean*, 804 F.3d at 187, the Court views these same allegations as supportive of Plaintiff's Section 504 claim as well.

Furthermore, Plaintiff alleges that he applied for extended athletic eligibility as a modification to the Duration of Competition Rule under federal law due to his claimed disability, and that Defendants failed to elucidate any reason or provide him with any response explaining why he was not entitled to his requested accommodation—or, for that matter, any other modification. The Commissioner's alleged blanket refusal to address this issue at all is what draws Plaintiff's claim out of the realm of "bureaucratic inaction" and potentially into the sphere of an "intentional violation." *See Loeffler*, 582 F.3d at 275-76. Courts within and without this Circuit have found disputed issues of fact regarding a public entity's "deliberate indifference" where the defendant has denied the requested accommodation after failing to pursue any sort of investigation or attempt at remedial action. *See Updike v. Multnomah County*, 870 F.3d 939, 954 (9th Cir. 2017) (stating that "[a] denial of a request [for an accommodation] without investigation is sufficient to survive summary judgment on the question of deliberate indifference"), *cert. denied sub nom. Multnomah County, Oregon v. Updike*, 139 S. Ct. 55 (2018); *Loeffler*, 582 F.3d at 276 (noting that "it is not clear that the district court construed all the facts in the light most favorable to the Loefflers" where it "did not reference any of the Loefflers' alleged attempts to secure an interpreter prior to surgery, or their numerous attempts to secure one afterward," which went "unheeded"); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1140 (9th

Cir. 2001) (stating that the plaintiff "provided sufficient evidence to create a triable issue of fact as to whether [the defendants] . . . had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action"), *as amended on denial of reh'g* (Oct. 11, 2001); *Nat'l Ass'n of Deaf v. State*, 318 F. Supp. 3d 1338, 1348 (S.D. Fla. 2018) (denying the defendants' motion to dismiss where the plaintiff notified the defendants of the alleged ADA and Section 504 violations, but never received a response, and where the defendants' response to a related Federal Communications Commission complaint "evidences no intent to change their current practices"); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 685-86 (S.D. Ind. 2015) (stating that "[i]t is the defendant's duty to undertake a fact-specific investigation . . . to determine the proper accommodation required, giving 'primary consideration' to the plaintiff's preference'" and denying summary judgment where a reasonable jury could conclude that the decisions to deny the requests were made "without making sufficient effort to determine whether it would have been possible to provide the requested accommodation without fundamental alteration or undue burden, or to consider whether some alternate accommodation could be provided"); *Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-0799 (JFB) (VVP), 2007 WL 1456221, at *16 (E.D.N.Y. May 16, 2007) (finding the plaintiffs "sufficiently pled the requisite 'gross misjudgment' . . . to withstand a motion to dismiss" where they alleged "that defendants were aware of plaintiffs' disabilities, that plaintiffs' parents requested accommodation and programs to address such disabilities and that defendants intentionally refused to take any remedial or corrective action to remedy the problems"); *Naiman v. N.Y. Univ.*, No. 95 CIV. 6469 (LMM), 1997 WL 249970, at *5 (S.D.N.Y. May 13, 1997) ("Assuming that intent is

a prerequisite for monetary relief under the [Rehabilitation Act], Naiman's allegation that he requested a qualified interpreter, which was not provided, *coupled with the absence of any allegation that [the defendant] attempted to provide Naiman with effective communication*, sufficiently alleges intent." (emphasis added)); *see also Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla.*, 960 F. Supp. 2d 1254, 1267 (N.D. Okla. 2013) (finding the plaintiffs' allegations that "bullying behavior was reported . . . to the school, which . . . *did not take responsive action*," sufficient "[a]t the dismissal stage" to plead "a claim for disability-based student-on-student harassment" (emphasis added)).

The Commissioner has failed to describe any actions taken to investigate or otherwise respond to Plaintiff's requested accommodation. It is apparent from her arguments that the Commissioner believes no modification to the Duration of Competition Rule could be prescribed because it would fundamentally alter the interscholastic athletics services provided by New York State. (*See* Dkt. 89-1 at 11-13; Dkt. 94 at 7-8). The Court has not determined whether the Duration of Competition Rule is an "essential eligibility requirement" because that inquiry requires resolution of factual disputes not appropriate at the pleadings stage. (Dkt. 58 at 20-21). Whether or not the Commissioner's view ultimately prevails, Plaintiff has alleged that he requested an accommodation from the strictures of the Duration of Competition Rule under federal law, and that he never received any response to this request despite proceeding with the administrative review process provided under New York law. These allegations are sufficient to survive the Commissioner's motion for judgment on the pleadings.

Therefore, the Court rejects the Commissioner's argument that Plaintiff has failed to state a claim for monetary damages under Section 504.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion to dismiss or, in the alternative, for judgment on the pleadings (Dkt. 89) is granted insofar as it seeks dismissal of Plaintiff's requests for injunctive and declaratory relief and Plaintiff's ADA claim for monetary damages as against the Commissioner, and it is otherwise denied.

SO ORDERED.


ELIZABETH A. WOLFORD
United States District Judge


Dated:     March 15, 2019
           Rochester, New York